J. Harold CAGLE, Individually and as
Next–Friend and Guardian of Todd
Lee Cagle, Plaintiff–Appellant,

v.

UNITED STATES of America,
Defendant–Appellee.

No. 90–6388.

United States Court of Appeals,
Sixth Circuit.

Argued May 16, 1991.

Decided June 25, 1991.

Andrew H. Owens (argued), Memphis, Tenn., for plaintiff-appellant.

Sidney P. Alexander, Asst. U.S. Atty. (argued), W. Hickman Ewing, Jr., U.S. Atty., Memphis, Tenn., for defendant-appellee.

Before MERRITT, Chief Judge, and NORRIS and SUHRHEINRICH, Circuit Judges.

MERRITT, Chief Judge.

Plaintiff's eleven year old son injured himself in Shiloh National Military Park when a battlefield cannon collapsed on him. Plaintiff sued defendant under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.*, and now appeals the grant of summary judgment for defendant. We affirm.

## BACKGROUND

During an April 24, 1986 school field trip to Shiloh, plaintiff's son, Todd Cagle, and several of his classmates were playing on a 30 pounder Parrot siege cannon, which weighs about 4200 pounds. It is not in dispute that these children, including Todd Cagle, were on top of the back end of the barrel and were riding it like a "see-saw." Another child was pushing the front end of the barrel to make it go down. As Todd Cagle was climbing off the barrel, the axle of the cannon carriage broke. The barrel fell on Cagle, pinning his leg to the ground and fracturing his thumb and knee.

Both parties agree that the cannon fell as a result of the "see-saw" rocking of the cannon and, furthermore, that the children were able to rock the cannon because a restraining rod had not been reinstalled after the cannon had been taken apart for maintenance. Defendant concedes that some of the Shiloh park rangers knew that the cannon would rock without the restraining rod in place and that children frequently climbed on the cannons. However, park policy was for the rangers to advise those playing on cannons to get off them. According to the park rangers, no cannon had ever collapsed (except when struck by a car or heavy equipment). However, park records indicate that visitors had mashed their fingers and scratched themselves while playing on the cannons. At the time of the accident, Shiloh did not charge for admission to the park.

## ANALYSIS

The Tort Claims Act provides that the United States is liable "in the same manner and to the same extent as a private individual under like circumstances...." 28 U.S.C. § 2674. The Tennessee Landowner Statute, a broad "recreational use" statute, Tenn.Code Ann. § 70–7–101 *et seq.*,[1] shields

---

**1.** The Tennessee Landowner Statute was amended in 1987, subsequent to Cagle's accident. All references to the statute, unless otherwise indicated, are to the unamended version, which is set forth in relevant part below:

**70–7–101. Definitions.**—For the purpose of this chapter the words:

(1) "Land" or "premises" are defined and shall include all real property, waters, private ways, trees and any building or structure which might be located on said real property, waters and private ways; and

(2) "Landowner" is defined as being the legal title holder or owner of said land or premises, and it shall likewise include any lessee, occupant or any other person in control of said land or premises.

**70–7–102. Landowner's duty of care.**—The landowner, lessee, occupant or any person in control of said land or premises shall owe no duty of care to keep such land or premises safe for entry or use by others for hunting, fishing, trapping, camping, water sports, hiking, or sightseeing, nor shall such landowner be required to give any warning of hazardous conditions, uses of, structures, or activities on such land or premises to any person entering on such land or premises for such purposes, except as provided for in § 70–7–104.

**70–7–103. Effect of landowner's permission.**—Any landowner, lessee, occupant, or any person in control of said land or premises who gives permission to another person to hunt, fish, trap, camp, hike, sightsee, upon such land or premises does not thereby:

(1) Extend any assurance that the premises are safe for such purpose;

from liability landowners who open up their lands for recreational purposes without charging those who use the land. The District Court found for defendant based on its determination that the Tennessee Landowner Statute applies to defendant and that the statute shields defendant from liability. On appeal, plaintiff makes five challenges to this determination.

Tennessee's recreational use statute is designed to encourage owners to open their land for recreational use. It provides that a landowner neither owes a duty of care to keep land or premises safe for certain recreational users nor is such a landowner required to give any warning to recreational users for any hazardous conditions which might exist on the property. § 70–7–102. Furthermore, the statute shields a landowner from liability even where the landowner grants recreational users permission to use the land. § 70–7–103. However, the statute will not shield landowners whose willful or malicious action causes a plaintiff injury, § 70–7–104(1), or those landowners who receive consideration from recreational users for the use of their land. § 70–7–104(2).

## I.

■ Plaintiff's first argument is that the Tennessee Landowner Statute does not apply to defendant because defendant is a governmental entity. Instead, plaintiff contends that defendant should be held to an ordinary duty of care and, accordingly, that the district court erred in granting summary judgment for defendant because defendant was negligent. Plaintiff's argument that § 70–7–101 *et seq.* does not apply to defendant is not supported by the language of the statute. Section 70–7–101 defines landowner as any "legal title holder or owner" of land upon which an injury occurs; no distinction is made between public and private land.[2] Furthermore, the general rule that a landowner owes no duty of care to recreational users of his land makes no distinction between public or private ownership of the land. *See* §§ 70–7–102, 70–7–103.

Even if the Tennessee Landowner Statute were intended only to decrease the liability of private landowners, plaintiffs in federal district courts may institute civil actions against the federal government only under circumstances where the United States, *if a private person*, would be liable under state law. 28 U.S.C. § 1346(b) (emphasis added); 28 U.S.C. § 2674; *see also Shaver v. Tennessee Valley Authority*, 565 F.Supp. 12, 13 (E.D.Tenn.1982). Because private landowners in Tennessee are shielded from liability subject to the requirements of the statute, plaintiff may only proceed against defendant under similar circumstances.

## II.

■ In the alternative, plaintiff contends that, even if the Tennessee Landowner Statute applies generally to governmental entities such as defendant, the statute does not apply to plaintiff because Todd Cagle's

---

(2) Constitute the person to whom permission has been granted to legal status of an invitee to whom a duty of care is owed; or

(3) Assume responsibility for or incur liability for any injury to such person or purposely caused by any act of such person to whom permission has been granted except as provided in § 70–7–104.

**70–7–104. Conditions under which liability unaffected.**—This chapter does not limit the liability which otherwise exists:

(1) For willful or malicious failure to guard or warn against a dangerous condition, use, structure or activity;

(2) For injuries suffered in any case where permission to hunt, fish, trap, camp, hike, sightsee, or any other legal purpose was granted for a consideration other than the consideration, if any, paid to said landowner by the state of Tennessee, the federal government, or any other governmental agency; or

(3) For injury caused by acts of persons to whom permission to hunt, fish, trap, camp, hike, sightsee, or any other legal purpose was granted; to third persons or to persons to whom the person granting permission, or the landowner, lessee, occupant, or any person in control of said land or premises owed a duty to keep the land or premises safe or to warn of danger.

**2.** We note a 1987 amendment to the statute makes this seemingly unambiguous language even clearer by explicitly stating that the word "landowner" includes "any governmental entity." Tenn.Code Ann. § 70–7–101(2)(B) (1987).

activity on defendant's land (playing on a cannon) is not specifically enumerated in § 70-7-102.[3]

In opposition to this argument, defendant argues that the applicability of the statute does not depend on the specific activity conducted by the plaintiff at the time the injury occurs. Instead, defendant contends, courts must focus on the nature and scope of the activity for which the premises are held open, in this case, sightseeing, which is an activity enumerated in the statute. Defendant cites two cases in support of the proposition that immunity applies to a landowner even if the activity causing injury is not explicitly mentioned in the recreational use statute. *See Hegg v. United States*, 817 F.2d 1328, 1330 (8th Cir.1987) (applying immunity for defendant where plaintiff injured while swinging on a swing on recreational property owned by United States even though swinging not mentioned in state recreational use statute); *Schneider v. United States, Arcadia Nat. Park*, 760 F.2d 366, 368 (1st Cir.1985) (immunity provided under Massachusetts recreational use statute applies where plaintiff injured while drinking coffee in national park although drinking coffee not activity listed in recreational use statute).

We are persuaded that Todd Cagle's injury was caused while he was "sightseeing" at Shiloh. Although the District Court found that some park visitors sometimes climbed on the cannons, park employees discouraged such practice pursuant to park policy. Without doubt, the historic battlefield cannon upon which Cagle and the other children were playing was not intended to be ridden like a "see-saw." Instead, it and the other cannons at Shiloh contributed to the historical significance of this military park. We make this distinction merely to note that Shiloh is not a playground park and that Todd Cagle was not injured while playing on a typical piece of playground equipment. Accordingly, we do not express an opinion as to a potential defendant's liability for an injury which results from an activity not explicitly mentioned or clearly related to one of the enumerated activities of the statute.

### III.

██ Plaintiff next argues that since defendant undertook to inspect and maintain the battlefield cannons, the immunity provisions of the statute should not apply. In support of this argument, plaintiff cites *Stephens v. United States*, 472 F.Supp. 998 (C.D.Ill.1979), for the proposition that, despite a recreational use statute, a landowner owes visitors the common law duty of care if he voluntarily inspects his lands. In so holding, the court in *Stephens* states that it is bound by the Illinois Supreme Court's "stringent rule" which rejects the "[s]ound public policy" of "encourag[ing] ... safety inspections ... without waiver of the defenses under [Illinois recreational use statute]." *Id.* at 1010. Tennessee apparently has no such "stringent rule." Furthermore, the statute seems to anticipate, and reject, the argument that plaintiff makes. Section 70-7-102 explicitly states that a landowner is not "required to give any warning of hazardous conditions, uses of, structures, or activities on such land ... except as provided for in § 70-7-104." Read in conjunction with § 70-7-104(1), the statute seems to impose liability in this situation *only* if the landowner inspects his land *and* then willfully or maliciously fails to guard against or warn users of such dangers. Absent this "willful or malicious" conduct, a landowner otherwise shielded by this statute does not waive immunity simply by inspecting his property.

### IV.

██ Plaintiff also argues that defendant's act was willful and malicious under the theory that defendant knew of the dangers of the cannons (after the restraining rods had been removed), yet nonetheless permitted children to play on them. This argument must also fail. In order to be

---

**3.** The statute explicitly states that a landowner owes no duty, subject to § 70-7-104, to those who use the land for "hunting, fishing, trapping, camping, water sports, hiking, or sightseeing...."

held liable for willful and malicious conduct, one must act intentionally, deliberately, and purposefully. *See Kingsport v. Quillen*, 512 S.W.2d 569, 573 (Tenn.1974). Willful misconduct requires more than negligence; it suggests "deliberation and intentional wrong-doing." *Nashville, C. & S. L.R. Co. v. Wright*, 147 Tenn. 619, 623, 250 S.W. 903 (1923) (citation omitted). Plaintiff has not raised material issues of fact which would suggest that defendant engaged in such deliberate, wrongful conduct. At most plaintiff alleges that defendant knew that the cannons (without restraining rods) would roll slightly, mashing fingers in some cases, and would collapse if struck with a car or piece of heavy equipment. No evidence was presented that defendant knew there existed a danger that a cannon could collapse from children playing on it.

### V.

Lastly, plaintiff contends that defendant's immunity is altered by § 70–7–104(3), which states that the statute does not limit the liability which otherwise exists:

(3) For injury caused by acts of persons to whom permission to hunt, fish, trap, camp, hike, sightsee, or any other legal purpose was granted; to third persons or to persons to whom the person granting permission, or the landowner, lessee, occupant, or any person in control of said land or premises owed a duty to keep the land or premises safe or to warn of danger.

Plaintiff asks us to interpret this exception to disallow immunity for landowners where an injury results from the negligent act of a person to whom permission to use the premises was granted. Following this reading of the statute, plaintiff states that defendant should be held liable because of the negligent acts of the other children whom defendant allowed to enter the park and who allegedly caused Todd Cagle's injuries (presumably by playing on the cannon while he was under it.)

At the outset, we agree with plaintiff that a textual reading of this section permits such an interpretation. However, we hasten to note that such an interpretation was almost certainly not intended by the drafters of the statute. To so hold would lead to the seemingly contradictory result of subjecting landowners to tort liability if they did not monitor the conduct of recreational users of their land and actively supervise the actions of such users. We are reluctant to conclude that the Tennessee legislature intended to impose such an onerous burden on landowners in light of the apparent legislative desire to open up private lands for public use through the granting of immunity to landowners as set forth in the statute.

A more plausible interpretation of this section is that it was drafted to prevent the statute from being used as a shield by a third-party tortfeasor who, while on the landowner's property with the landowner's permission, injures someone else on the landowner's property.

We therefore AFFIRM the decision of the District Court.