**Karen BISHOP, et al.**

**v.**

**Helen G. BECKNER.**

Court of Appeals of Tennessee,
Eastern Section, at Knoxville.

May 15, 2002 Session.

Sept. 23, 2002.

Permission to Appeal Denied by
Supreme Court March 3, 2003.

Robert E. Pryor and Adam M. Priest, Knoxville, Tennessee, and Peter Alliman, Madisonville, Tennessee, for the appellants, Karen Bishop and Eric Bishop.

Jerry Shattuck, Clinton, Tennessee, and John T. Johnson, Jr., and Amanda M. Belew, Knoxville, Tennessee, for the appellee, Helen G. Beckner.

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and D. MICHAEL SWINEY, J., joined.

## OPINION

Jason Bishop was killed when he fell off a ledge while inside a cave on the defendant's property. The plaintiffs—mother and brother of the deceased—sued the defendant. The mother sued for her son's wrongful death; the brother sued for "negligent infliction of emotional harm" allegedly caused by his witnessing the fall that led to his brother's death. The defendant filed a motion for summary judgment, asserting that the deceased was a trespasser to whom she owed a limited duty— one that she claimed not to have violated; and that, in any event, she is immune from suit under T.C.A. § 70–7–101, *et seq.* (1995) ("the Recreational Use Statutes"). The trial court granted the defendant's motion. The plaintiffs appeal, claiming that the deceased was not a trespasser and that the statutory immunity does not apply to the facts of this case. We affirm.

## I.

Since this appeal involves a grant of summary judgment, we are called upon to decide anew "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any *material* fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04 (emphasis added). In deciding this case, we "must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence." *Byrd v. Hall,* 847 S.W.2d 208, 210–11 (Tenn.1993). Since a motion for summary judgment presents a pure question of law, our review is *de novo* with no presumption of correctness as to the trial court's judgment. *Gonzales v. Alman Constr. Co.,* 857 S.W.2d 42, 44 (Tenn.Ct. App.1993).

## II.

The material facts of this case are undisputed. On October 28, 1998, the deceased, who was 14 years old, and his brother, Eric Bishop, age 18, along with two companions entered a cave known as the Spring Hill Cave ("the cave"), which cave is located on the property of the defendant Helen G. Beckner.[1] The cave has multiple entrances on the defendant's property, and it is a rather sprawling complex of tunnels and caverns. Prior to October 28, 1998, the Bishop brothers had visited the cave between 15 and 20 times. As a result of their previous visits, the brothers were generally familiar with the cave. On the day of the accident, the brothers, along with their companions, accessed the cave through an entrance that they had not previously used. This opening was located just above the entrance usually used by

them. After entering the cave, the members of the caving party negotiated through about 100 feet of tunnels, sometimes squirming along tight passageways on their hands, knees, and chests, until they reached a large, room-like cavern. The tunnel through which the caving party accessed the cavern did not open into the floor of the cavern; rather it opened onto a ledge that extended for a distance into and above the floor of the cavern. The ledge sloped downwards to a point where it ended; the caving party could not see what was beyond the edge of the ledge. The group traversed the ledge into the open area and then stopped and sat together. Upon closer inspection with the aid of artificial light, at least one member of the party, Eric Bishop, recognized that the area beyond the ledge opened up into an area that he had previously accessed by way of another cave entrance. Eric had previously accessed this area from a lower tunnel, and had noticed that the ledge upon which he now found himself was 50 to 75 feet above the bottom of the cavern.

The four individuals remained in the cave for a time and conversed with each other about the cave. By throwing rocks into the darkness beyond the ledge, they discovered that several seconds would elapse before they would hear it hit the bottom. In their discussions, the members of the caving party commented to each other how horrible it would be if someone fell off the ledge.

To exit the area, the group traversed back across the ledge, and at one point in time, they again had to crawl to gain access to the narrow tunnel from which they had entered the cavern. Either at the end or near the end of the "train" of the crawling cavers, Jason Bishop began to slip down the slope of the ledge. Unable to

1. Apparently, saltpeter was mined in the cave during the Civil War.

regain his traction, Jason continued to slide until he slipped over the edge and fell 50 to 75 feet to the floor below. Eric witnessed his brother's fall. As previously indicated, Jason Bishop died as a result of the fall.

In 1976, the defendant purchased the property upon which the cave is located. That tract, along with other contiguous properties purchased over time, together contains some 150 acres. She was aware of the existence of the cave on her property and the propensity of individuals to enter her property to go to the cave. The defendant had never ventured inside the cave and, until she heard the news of the accident involving Jason Bishop, had no knowledge of anyone being injured in the cave.

The plaintiffs do not allege that Mrs. Beckner expressly invited anyone, including the plaintiff Eric Bishop or the deceased, onto her property for any purpose. Furthermore, the plaintiffs do not allege that the defendant specifically knew of the deceased's presence on her property or that she took any specific action regarding the caving party's presence on her property.

### III.

The plaintiff Karen Bishop alleges that the negligence of the defendant caused the wrongful death of Jason Bishop, and, as the survivor of her son, she is suing for his wrongful death. The plaintiff Eric Bishop alleges that the defendant is liable to him for negligent infliction of emotional distress resulting from his witnessing the fall that injured his brother and caused his death. Both plaintiffs allege that the defendant breached a duty to warn Jason Bishop, as an alleged licensee on the defendant's property, of the dangerous condition that existed in the cave and that this breach constitutes negligence. The plain-

tiffs assert that the failure of the defendant to take affirmative steps to keep the cavers from entering her land constituted an implied invitation to enter the land and that this invitation means the deceased was a licensee to whom the defendant owed an affirmative duty of care.

The defendant counters with two distinct defenses. She asserts that the deceased was a trespasser to whom she owed a limited duty to refrain from willful or wanton conduct. In addition, the defendant argues that the Recreational Use Statutes, T.C.A. § 70–7–101, *et seq.*, provide her with immunity from suit. We do not find it necessary to address the status of the deceased on the defendant's property, as we find and hold that, regardless of the deceased's status, the defendant has immunity from this suit under the Recreational Use Statutes.

### IV.

The core of the Recreational Use Statutes is found at T.C.A. § 70–7–102. As pertinent to the facts of this case, that statute provides as follows:

> The landowner, ... of such land or premises owes no duty of care to keep such land or premises safe for entry or use by others for such recreational activities as ... caving ..., nor shall such landowner be required to give any warning of hazardous conditions, uses of, structures, or activities on such land or premises to any person entering on such land or premises for such purposes, except as provided in § 70–7–104.

The statutory scheme of which T.C.A. § 70–7–102 is a part does not differentiate between those who enter the land with permission and those who do not. This can be seen from the following pertinent language of T.C.A. § 70–7–103:

> Any landowner, ... of the land or premises ... *who gives permission to anoth-*

*er person* to ... cave ... upon such land or premises does not thereby:

(1) Extend any assurance that the premises are safe for such purpose;

(2) Constitute the person to whom permission has been granted to legal status of an invitee to whom a duty of care is owed; or

(3) Assume responsibility for or incur liability for any injury to such person or purposely caused by any act of such person to whom permission has been granted except as provided in § 70–7–104.

(Emphasis added). As can be seen, T.C.A. §§ 70–7–102 & –103 are both subject to the same exception, *i.e.,* "except as provided in § 70–7–104." The latter statute reads, in pertinent part, as follows:

This chapter does not limit the liability which otherwise exists for:

(1) Gross negligence, willful or wanton conduct which results in a failure to guard or warn against a dangerous condition, use, structure or activity;

\* \* \*

The Recreational Use Statutes were addressed by the Supreme Court in the case of *Parent v. State,* 991 S.W.2d 240 (Tenn. 1999). In that claims commission case, the defendant State of Tennessee argued that the plaintiff's complaint did not allege a cause of action because the complaint failed to allege one of the exceptions to immunity set forth in T.C.A. § 70–7–104. *Id.* at 242. The claims commission agreed with the State and dismissed the complaint. *Id.* On appeal, the Supreme Court reversed the dismissal of the plaintiff's complaint. *Id.* at 243. In the course of its opinion, the Supreme Court clearly stated the legal effect of the Recreational Use Statutes:

[T.C.A.] §§ 70–7–101 *et seq.* is merely an affirmative defense to other viable causes of action outside the recreational use statute. The exceptions in [T.C.A.] § 70–7–104 do not create new causes of action. *See* [T.C.A.] § 70–7–104 ("This chapter does not limit the liability which otherwise exists for...."). To adequately allege a claim, the plaintiffs are not required to plead § 104 exceptions to the State's immunity. Section 104 merely operates to: (1) negate the recreational use defense, and (2) allow a claimant to pursue a cause of action for which a recreational use defense has been raised.

*Id.* at 242–43. In the *Parent* case, the Supreme Court went on to explain how the Recreational Use Statutes are to be applied:

The recreational use defense requires a two-pronged analysis to determine whether the [defendant] is entitled to immunity. The inquiries are as follows: (1) whether the activity alleged is a recreational activity as defined by the statute; and if so, (2) whether any of the statutory exceptions or limitations to the immunity defense are applicable. If [T.C.A.] § 70–7–102 is applicable and no exceptions apply, the [defendant] is immune. If [T.C.A.] § 70–7–102 is applicable but an exception is also applicable, the [defendant] may be subject to liability.

*Id.* at 243.

## V.

In the instant case, the deceased was engaged in caving on the defendant's property. This activity is specifically identified in T.C.A. § 70–7–102. Thus, the first inquiry under *Parent, i.e.,* "whether the activity alleged is a recreational activity as defined by the statute," *id.,* is clearly answered in the affirmative.

Moving to the second inquiry under *Parent*, *i.e.*, "whether any of the statutory exceptions or limitations to the immunity defense are applicable," *id.*, we note that the only T.C.A. § 70–7–104 exception relied upon by the plaintiffs in the case at bar is that of "gross negligence." As support for this contention, the plaintiffs point to the fact that the defendant failed to place a "no trespassing" sign on the boundary of her property and did not place a warning sign outside the cave. The plaintiffs argue that these omissions amount to grossly negligent behavior. Thus, so the argument goes, the defendant is not entitled to the recreational use defense set forth in T.C.A. § 70–7–101, *et seq.* We disagree.

The concept of "gross negligence" is not defined in the statutory scheme.[2] In another context, it has been defined as "a negligent act done with utter unconcern for the safety of others, or one done with such a reckless disregard for the rights of others that a conscious indifference to consequences is implied in law." *Odum v. Haynes*, 494 S.W.2d 795, 807 (Tenn.Ct. App.1972).

The subject of gross negligence as an exception to the immunity granted by the Recreational Use Statutes has been addressed in at least one case since the General Assembly amended T.C.A. § 70–7–104(1) in 1987 to add the concept.[3] In *Sumner v. United States*, 794 F.Supp. 1358 (M.D.Tenn.1992), the plaintiff was injured by unexploded ordnance on a firing range on the military installation at Fort Campbell. *Id.* The District Court explained that the Army knew that the range had to be kept clear of trespassers because it knew of the potential for injury resulting from unexploded ordnance; in other words, that the Army had created the hazard and knew that it had to keep trespassers off the range. *Id.* at 1361. In *Sumner*, the District Court held that a failure to maintain a clear legible sign warning of such a *known* danger constituted gross negligence. *Id.* at 1367.

In the present case, while the defendant knew of the existence of a cave on her property, she did not know—and apparently had no reason to know—that the cave contained a particularly dangerous situation that might cause serious bodily harm or even death. The plaintiffs take exception to the foregoing statement. They believe there is evidence in the record that can be reasonably interpreted as showing that the defendant had some prior knowledge of the fact that going inside the cave could be dangerous. They point to the following deposition testimony of the defendant:

Q This accident that we're here about today, how did you learn about that accident?

A The newspaper. The late night news. I wasn't home that day. The 11

---

**2.** The phraseology of T.C.A. § 70–7–104(1)— "[g]ross negligence, willful or wanton conduct which results in ..." is somewhat curious. Among other things, it is not clear whether the concept of "willful or wanton conduct" is intended to be a separate concept from that of "gross negligence" or is simply an attempt by the legislature to define the "gross negligence" language. Assuming, without deciding, that they are separate concepts, we find no evidence of either.

**3.** The previous version of T.C.A. § 70–7–104(1), enacted in 1963, did not use the "gross negligence" language among the exceptions to immunity. The previous subsection (1) of T.C.A. § 70–7–104 provided as follows:

This chapter does not limit the liability which otherwise exists:
(1) For willful or malicious failure to guard or warn against a dangerous condition, use, structure or activity;

Chapter 177, Public Acts of 1963.

o'clock news that night, I knew there had been an accident.

Q So you saw the newspaper first and then saw the news?

A I saw the news that night and then the next day's paper.

Q I see. Had it ever crossed your mind that something like that might happen up there in the cave?

A Well, I think you think about that, but then you think anybody going in there would exercise good judgment and common sense, you know. It was my worst nightmare that something like that would happen.

We do not believe this testimony can be read as indicating that the defendant had such prior knowledge. In our judgment, the defendant's reference to her "worst nightmare" is nothing more than an after-the-fact expression of regret that this young man was killed on her property. There is nothing in this testimony that supports the plaintiffs' position. The defendant testified, without contradiction, that she had never entered the cave prior to this accident. Furthermore, there is no direct proof in the record that she had *any* knowledge or information regarding the inside of the cave.

The facts of this case are a far cry from *Sumner* where the Army knew of unexploded ordnance on its property—a condition created by the activities of the Army—and knew of the extreme hazard that such material would present to one on its property. We see no similarity between unexploded ordnance, created by the landowner and known by it to exist on its property, on the one hand, and a natural feature such as the Spring Hill Cave, the nature, extent, and any potential danger of which, was totally unknown to the landowner, on the other. In the instant case, the defendant did not create a danger on her property and was unaware of any danger. We find nothing in the facts before us that would give rise to an inference of a "conscious indifference to consequences," *see Odum*, 494 S.W.2d at 807, on the part of the defendant.

There are no facts or reasonable inferences from facts that could be construed to establish gross negligence on the part of the defendant. When we "take the strongest legitimate view of the evidence in favor of the nonmoving party," *see Byrd*, 847 S.W.2d at 210, we find that the evidence, interpreted most strongly in favor of the plaintiffs, at the very most shows simple negligence on the part of the defendant. Simple negligence does not operate to negate the immunity of T.C.A. § 70–7–102.

Since we have determined that the defendant is immune from suit under the Recreational Use Statutes, the status of the deceased, be it licensee or trespasser, is immaterial to the summary judgment analysis. Even assuming, purely for the sake of argument, that there are disputed material facts as to whether the defendant is liable to the plaintiffs, there are no disputed material facts impacting the issue of the recreational use immunity defense. The defendant is clearly entitled to it. Accordingly, the court finds that a grant of summary judgment to the defendant is appropriate.

## VI.

For the forgoing reasons, we affirm the judgment of the trial court. Costs on appeal are taxed to Karen Bishop and Eric Bishop. This case is remanded to the trial court for collection of costs assessed below, pursuant to applicable law.