<u>NOT RECOMMENDED FOR PUBLICATION</u>
File Name: 20a0666n.06

No. 19-6196

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

<table>
<tr><td>MYRA HULS,</td><td>)</td><td rowspan="11"></td></tr>
<tr><td></td><td>)</td></tr>
<tr><td style="padding-left:2em">Plaintiff-Appellant,</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>v.</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>MARK DAVIS,</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td style="padding-left:2em">Defendant-Appellee.</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
</table>

FILED
Nov 20, 2020
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE

BEFORE:      BOGGS, DONALD, and THAPAR, Circuit Judges.

BOGGS, Circuit Judge. In this diversity case, Myra Huls seeks damages for injuries from being thrown by a horse, alleging that her ex-boyfriend, Mark Davis, negligently bridled the horse. Mr. Davis moved for summary judgment, arguing that Tennessee's recreational-use statute barred liability. The district court granted his motion. But the district court erroneously interpreted the statute, so we vacate its judgment and remand for further proceedings.

**I**

Ms. Huls and Mr. Davis began dating in July 2016. After learning that Ms. Huls had ridden ponies in her youth, Mr. Davis bought her a horse, which Ms. Huls named Jo-Jo. Mr. Davis kept Jo-Jo on his family's farm in Tennessee. In early September 2016, Ms. Huls, who lives in Indiana, visited Mr. Davis on the farm, where she rode Jo-Jo without incident.

On September 23, Ms. Huls again visited the farm to spend the weekend with Mr. Davis, staying with him in a house on the property. Two days later, Ms. Huls took Jo-Jo out for another

ride. The parties dispute whether it was Ms. Huls or Mr. Davis who bridled Jo-Jo. After riding for some time, Ms. Huls turned Jo-Jo around to return to the house. Suddenly, Jo-Jo started bucking, throwing Ms. Huls off his back.

Ms. Huls suffered serious injuries and underwent lengthy rehabilitation therapy. Around March 2017, her relationship with Mr. Davis ended. That September, she sued him for negligence,[1] alleging that he had failed to fasten the bridle to Jo-Jo correctly and failed to warn Ms. Huls of the danger she was in. The bridle was a hackamore bridle, a particular kind of bridle that applies pressure to the horse's nose and head, not a bit in the mouth as other bridles do. Ms. Huls claims that the hackamore bridle was missing a chinstrap and placed too low on Jo-Jo's nose. As a result, she claims, after she pulled the reins, Jo-Jo threw her because he was in severe pain.

Mr. Davis moved for summary judgment, arguing that the Tennessee recreational-use statute, Tenn. Code Ann. §§ 70-7-101 to -105, barred liability. He also raised two other grounds in his motion.[2] The district court found that the recreational-use statute barred Ms. Huls's claim and declined to address Mr. Davis's other two arguments. Ms. Huls timely appealed.

**II**

**A**

We review a grant of summary judgment de novo. *Jones v. Clark Cnty.*, 959 F.3d 748, 756 (6th Cir. 2020). Summary judgment is granted if and only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the defendant is the movant and the law precludes liability even if all

---

[1] She also sued Davis Farms, Inc., but later voluntarily dismissed her claim against the corporation.

[2] These included a claim of immunity under the Equine Activities Act, Tenn. Code Ann. §§ 44-20-101 to -105, and an argument that, even if he owed Ms. Huls a duty of reasonable care, he did not breach that duty.

disputed facts are resolved in favor of the plaintiff, the defendant is entitled to summary judgment. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

**B**

For a case arising under diversity jurisdiction, we apply "the substantive law of the state in which the district court sits"—here, Tennessee—"according to the decisions of the state's highest court." *Perry v. Allstate Indem. Co.*, 953 F.3d 417, 421 (6th Cir. 2020). In interpreting a state statute, we apply "the rules of construction that the state supreme court applies when construing its own statutes." *Faber v. Ciox Health, LLC*, 944 F.3d 593, 602 n.7 (6th Cir. 2019). The Tennessee Supreme Court assigns "primary importance" to a statute's text, giving words their "natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose." *Coffee Cnty. Bd. of Educ. v. City of Tullahoma*, 574 S.W.3d 832, 839 (Tenn. 2019); *see also Riggs v. Burson*, 941 S.W.2d 44, 54 (Tenn. 1997) ("A basic principle of statutory construction is to ascertain and give effect to legislative intent . . . . This means examining the language of a statute and applying its ordinary and plain meaning." (citations omitted)).

If a state's highest court "has not spoken on an issue," we look "to the decisions of its lower courts, to the extent they are persuasive, to predict how the [highest court] would decide the issue." *Perry*, 953 F.3d at 421. But we ignore a lower state court's decision if there is "persuasive data that the highest court of the state would decide otherwise." *Am. Tooling Ctr., Inc. v. Travelers Cas. & Surety Co. of Am.*, 895 F.3d 455, 460 n.1 (6th Cir. 2018). In particular, a Tennessee appellate court's reading of a statute is unpersuasive if it contradicts the statute's plain text. *Faber*, 944 F.3d at 601–02 (following "the plain meaning of the statute despite" a Tennessee appellate court's holding that expanded the statutory text to preserve what that court believed was "the legislature's objective").

**C**

Tennessee's recreational-use statute comprises §§ 70-7-101 to 70-7-105 of the Tennessee Code Annotated.[3] The statute limits a landowner's or a land occupant's liability to a person using the owner's or occupant's land for recreational purposes.

Section 102 restricts an owner's or occupant's duty to keep the land or premises safe for a list of recreational activities made nonexclusive by the presence of a catchall term; animal riding is one of the expressly listed activities. § 102(a). It also restricts the duty to warn recreational users about "hazardous condition, uses of, structures, or activities on" the land or premises. *Ibid.*

Section 103 protects an owner or occupant "who gives permission to another" to engage in a list of recreational activities. Notably, although the activities listed in § 103 are the same as those listed in § 102, § 103 does not contain a catchall term as § 102 did. The protections § 103 provides are the focus of this appeal and are discussed in more detail below.

Section 104 creates exceptions to the liability restrictions in §§ 102 and 103. It provides that the statute "does not limit the liability that otherwise exists" for "[g]ross negligence, willful or wanton conduct" that causes "a failure to guard or warn against a dangerous condition, use, structure, or activity." § 104(a)(1).

Last, § 105 allows certain recreational users of land to waive certain kinds of liability, but not "liability for gross negligence, or willful or wanton conduct, or for a failure to guard or warn against a dangerous condition, use, structure, or activity." The set of recreational activities in § 105 is a strict subset of those listed in §§ 102 and 103, and to sign an effective waiver, the recreational user must be at least eighteen years old and must have paid a "consideration" in exchange for the permission.

---

[3] We denote these sections §§ 101–105 unless it would create ambiguity.

## III

Mr. Davis contends that § 103 bars Ms. Huls's claim.[4] The district court agreed and alternatively held that § 102 would also bar her claim. Those conclusions are incorrect. First, § 103(3) does not preclude liability because Ms. Huls's allegation does not relate to a negligent grant of permission. Second, § 103(2) does not bar liability because Ms. Huls was already Mr. Davis's invitee before he gave her permission to ride Jo-Jo, and that grant of permission did not revoke her status as an invitee. Last, § 102 does not bar liability because Ms. Huls alleges neither that Mr. Davis failed to keep the farm safe for entry or use for horseback riding nor that he failed to give her warning of "hazardous conditions, uses of, structures, or activities on" the farm. (Because §§ 102 and 103 do not apply here, we need not decide whether Ms. Huls's allegations fall within the exceptions of § 104.)

## A

Ms. Huls interprets § 103(3) to apply only to causes of action relating to the condition of the land. The statutory text contains no such limitation. But Mr. Davis's reading—that the statute protects a landowner from liability for *any* injury to a person with permission to partake in recreational activities on the landowner's land—is also unsupported. The text provides only that a landowner "does not *by giving such permission*" incur liability to a recreational user of the land. § 103(3) (emphasis added). Mr. Davis's reading would be correct if the italicized phrase were left out. But the phrase is there, and we must give it its full effect. *Coffee Cnty.*, 574 S.W.3d at 839.

---

[4] The relevant text of § 103 is:

> Any . . . person in control of the land or premises . . . who gives permission to another to . . . ride animals . . . does not by giving such permission:
>
> (1)  Extend any assurance that the premises are safe for such purpose;
>
> (2)  Constitute the person to whom permission has been granted to legal status of an invitee to whom a duty of care is owed; or
>
> (3)  Assume responsibility for or incur liability for any injury to such person . . . except as provided in § [104].

And the only sensible reading is that the act of giving permission does not create any new liability. But the statute does not say it removes any liability that would otherwise exist.

Mr. Davis objects that "there is no basis to conclude . . . that permission alone creates a cause of action." But an affirmative grant of permission *can* give rise to a cause of action for negligence. In *Mid-South Pavers, Inc. v. Whitaker*, 385 S.W.2d 284 (Tenn. Ct. App. 1964), Ms. Whitaker was stopped by a flagman near a road construction site; after a few minutes, the flagman, despite being unable to see conditions at the construction site, indicated that traffic could proceed. *Id.* at 586, 589. As Ms. Whitaker drove forward, a truck pulled out of the construction site from behind other trucks parked near the site. *Id.* at 590. She swerved but could not stop her car before she ran into one of the parked trucks. *Id.* at 586–87. The court found sufficient evidence for a jury to conclude that either the trucking company had negligently allowed its truck to pull out into traffic or that the flagman had negligently authorized traffic to proceed. *Id.* at 591.

Mr. Davis also points to case law purporting to interpret § 103. Citations to § 103 in the case law are sparse. We know of only two cases citing it at all: *Cagle v. United States*, 937 F.2d 1073 (6th Cir. 1991), and *Bishop v. Beckner*, 109 S.W.3d 725 (Tenn. Ct. App. 2002).

In *Cagle*, we mentioned in passing dicta that § 103 "shields a landowner from liability even where the landowner grants recreational users permission to use the land." 937 F.2d at 1075. That comment was not completely at odds with the statute; a contradiction arises only from reading it implicitly as "shields a landowner from *all* liability." But even assuming that implicit "all," we are not bound to *Cagle*'s understanding. Only holdings, not dicta, of published Sixth Circuit opinions are binding on later panels. *Wright v. Spaulding*, 939 F.3d 695, 700 (6th Cir. 2019). *Cagle*'s passing comment on § 103 was neither necessary to nor sufficient for our judgment in that case, so it does not bind us now.

*Bishop* reads § 103 along with § 102, interpreting the two as creating a statutory scheme indifferent "between those who enter the land with permission and those who do not." 109 S.W.3d at 727. But *Bishop*'s comment inaccurately interprets the statute's plain text. Its analysis of § 103 is conclusory, merely emphasizing the phrase "who gives permission to another person," *id.* at 727–28, and ignoring the word "thereby,"[5] which limits § 103(3)'s exemption only to liability flowing the grant of permission itself but not from other sources. Contrary to the direction of the Tennessee Supreme Court, *Bishop*'s interpretation of § 103 reads a word out of the statute. This is persuasive data that the Tennessee Supreme Court would have decided *Bishop* differently, leading us to reject the appellate court's interpretation. *Am. Tooling Ctr.*, 895 F.3d at 460 n.1. Moreover, *Bishop*'s comment was not critical to its judgment—as in *Cagle*, it is dictum, not a holding. For these reasons, *Bishop*'s reading has no bearing on our interpretation of § 103(3).

**B**

Mr. Davis also relies on § 103(2) as an affirmative defense. This section provides that a landowner who gives permission to another to ride animals on the land "does not by giving such permission: . . . [c]onstitute the person to whom permission has been granted to legal status of an invitee to whom a duty of care is owed." Tennessee has abolished the common-law distinction between licensees and invitees. *Hudson*, 675 S.W.2d at 703. Thus, under § 103(2), giving permission to use land for a recreational activity does not impose on the landowner a duty of reasonable care to the permittee. According to Mr. Davis, because he gave Ms. Huls permission to ride a horse on his land, she was not an invitee, so he owed her only the duty owed a trespasser.

---

[5] In 2002, the phrase "by giving such permission" was not yet present in § 103; the text instead used the single word "thereby." *See Bishop*, 109 S.W.3d at 727–28. At some point between 2002 and 2003, "thereby" was replaced with the current wording. That new wording became law no later than 2004, when the legislature reenacted volume 12B of the 2004 Tennessee Code Annotated, which contained the current version of § 103. Tenn. Code Ann. § 1-2-114(b)(1)(C). In any case, both the previous and current wording have the same natural meaning in the context of the sentence, so the change does not affect our analysis.

But while the mere grant of permission to use land for a recreational purpose cannot elevate a permittee to invitee status, a landowner may take other actions that do confer that status. The statute gives no indication that a landowner's preexisting duty of care to an entrant is displaced if the landowner later gives the entrant such permission. Rather, the statute contemplates preexisting duties. *See* § 104(a) ("This part does not limit the liability that *otherwise exists* . . . ." (emphasis added)); § 105 (allowing a waiver of "the landowner's duty of care for injuries that arise from" a list of certain recreational activities).

Indeed, § 105 would be unnecessary if Mr. Davis's reading were correct. The liability waivable under § 105 is for injuries arising from one of a fixed list of recreational activities—all of which are included in § 103. The recreational user must also be at least 18 years old and have paid "a consideration" for that permission. § 105. Last, the injury must not be the result of the landowner's "gross negligence, or willful or wanton conduct, or . . . failure to guard or warn against a dangerous condition, use, structure or activity." *Ibid.* But Mr. Davis's reading of § 103 would immunize the landowner against liability for any injury to a recreational user except those caused by gross negligence or wanton or willful conduct. And the five arguments in his brief distinguishing § 105's coverage from § 103, even if correct, only confirm that his reading of § 103 is so broad that it necessarily encompasses the liability waivable under § 105.

Thus, without reducing § 105 to surplusage, § 103(2) can only make sense if it does not displace any previous duty of care owed by the landowner. In this case, two days before the accident, Ms. Huls returned to Tennessee to spend time with Mr. Davis, and the two stayed in the same house for the two nights before the accident. This is not a case where Mr. Davis's sole action was to give Ms. Huls permission to use his property for a horseback riding. The point of Ms. Huls's trip was to spend a romantic weekend with her then-boyfriend. Ms. Huls was an invitee on the

property well before Mr. Davis gave her permission to use it for horseback riding. While that permission did not make her an invitee, neither did it undo the status she already had.

## C

The district court alternatively held that, even if § 103 did not bar liability, § 102 still would. To come to this conclusion, it relied on a state appellate case, *McCaig v. Whitmore*, No. W2015-00646-COA-R3-CV, 2016 WL 693154 (Tenn. Ct. App. Feb. 22, 2016). That case held that § 102 barred claims of failing to instruct the plaintiff on how to operate an all-terrain vehicle properly. *McCaig* followed the two-part test of *Parent v. State*, 991 S.W.2d 240 (Tenn. 1999), formulating it as: "First, the court must determine whether the activity alleged is a recreational activity as defined by" § 102; if so, "then the court must determine whether any of the statutory exceptions or limitations to the immunity defense are applicable." 2016 WL 693154, at *4.

The district court erred in applying *McCaig*'s test without considering the context in which *Parent* and *McCaig* analyzed the statute. Contrary to the district court's suggestion, the Tennessee Supreme Court did not intend its test to nullify the plain language of § 102. Instead, the *Parent* court proceeded expressly on the basis that the claim at issue was about unsafe conditions on the land. There, the seven-year-old plaintiff was injured in a bicycling accident on state-owned property; unable to navigate a sharp turn on a steep paved trail, he was thrown from his bicycle. 991 S.W.2d at 241. He alleged that the state negligently created or maintained dangerous conditions on the trail. *Ibid. Parent*'s analysis began not with the recreational-use statute but instead identified the statutory source of the plaintiff's cause of action. *Id.* at 242. Only after having identified the cause of action did the court analyze § 102's effect and formulate the two-part inquiry. *Id.* at 243. Rather than reading § 102 to preclude all liability relating to the recreational activities listed,

*Parent*'s context indicates that its test applies only to causes of action arising from duties to maintain safe land or warn against hazardous conditions—in accord with § 102(a)'s plain text.

While *McCaig* uses *Parent*'s two-part inquiry without separately inquiring into the type of claim at issue, reading *McCaig* to broaden *Parent*'s scope beyond § 102's text would contradict the Tennessee Supreme Court's directive to give "primary importance" to a statute's text. *Coffee Cnty.*, 574 S.W.3d at 839; *see also McCaig*, 2016 WL 693154, at *3. Indeed, just as in *Parent*, the plaintiff's claims in *McCaig* were directed at a failure to warn about unsafe conditions. In *McCaig*, the plaintiff alleged that the defendant "failed to warn [the plaintiff] to avoid bumps in the lawn, to avoid the edges of the concrete driveway, and to avoid steel guidewires" while operating an all-terrain vehicle on the defendant's land. 2016 WL 693154, at *1. As in *Parent*, the plaintiff alleged a failure to warn of hazardous conditions, so the use of *Parent*'s two-part inquiry was appropriate.[6]

Because Ms. Huls's claims do not allege a failure to keep the land or premises safe or a failure to warn against hazardous conditions, structures, or activities on or uses of the land or premises, § 102(a) does not apply, and neither does the *Parent* test. The district court therefore erred in applying *Parent* and *McCaig* to her claims.

**IV**

In November 2019, the parties jointly[7] moved to certify the following question to the Tennessee Supreme Court: "Does Tenn. Code Ann. § 70-7-103 provide a distinct affirmative defense

---

[6] Mr. Davis points to language in *McCaig* indicating that the plaintiffs had also alleged that the defendant failed to instruct one of the plaintiffs how to use the ATV properly—facially, not an allegation of hazardous conditions (or of a failure to warn of hazardous conditions) on the land. 2016 WL 693154, at *1, 3. But the parties had already stipulated that the "gravamen" of the plaintiffs' claim was that "that Appellee failed to warn Appellant, Homer McCaig, of a dangerous condition existing on Appellee's property, and that his failure to warn of this dangerous condition was the legal cause of Homer McCaig's subsequent ATV accident and resulting injuries." Mem. of Law in Supp. of Joint Mot. to Suppl. R. at 1, *McCaig*, No. W2015-00646-COA-R3-CV (Tenn. Ct. App. Aug. 7, 2015). Unlike in *McCaig*, the gravamen of Ms. Huls's claim is not a failure to warn of a dangerous condition on Mr. Davis's property.

[7] At oral argument, counsel indicated that Ms. Huls no longer supports this motion.

separate and apart from the affirmative defense in Tenn. Code Ann. § 70-7-102?" A different panel of this court referred the motion to this panel for consideration.

We may certify a question of state law to that state's supreme court. *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974). According to its own rules, the Tennessee Supreme Court may answer a certified question of law if the certifying court determines that there are dispositive questions of Tennessee law for which there appears to be no controlling Tennessee Supreme Court precedent. Tenn. Sup. Ct. R. 23, § 1. Certification "is most appropriate when the question is new and state law is unsettled." *Transamerica Ins. Co. v. Duro Bag Mfg. Co.*, 50 F.3d 370, 372 (6th Cir. 1995). But even if a state supreme court "has not addressed the exact question at issue," if it has "well-established principles" governing the question, we may decline to certify it. *Ibid.*

In this case, the question that the parties requested to certify is not dispositive. As demonstrated above, even assuming that § 103 provides a separate affirmative defense from § 102, that defense does not apply here. Certifying the parties' question to the Tennessee Supreme Court is unnecessary. We therefore deny the motion.

**V**

For the reasons above, we vacate the district court's judgment.

Mr. Davis offered two other grounds below for summary judgment. Although the parties briefed these issues in this court, the district court has not ruled on either. We are "a court of review, not of first view." *VanderKodde v. Mary Jane M. Elliott, P.C.*, 951 F.3d 397, 404 (6th Cir. 2020) (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 718 n.7 (2005)). It would not be appropriate for us to decide those issues now. We remand for the district court to consider Mr. Davis's motion for summary judgment on his two remaining grounds.