

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 4, 2021 Session

## CURTIS PIERCE ET AL. v. STATE OF TENNESSEE

Appeal from the Tennessee Claims Commission
No. T20192785-1    James A. Halton, Commissioner
_____

### No. M2020-00533-COA-R3-CV
_____

This is a negligence case that was dismissed in the Tennessee Claims Commission for several articulated reasons, including that Tennessee's recreational use statute barred the plaintiffs' claims.  For the specific reasons stated herein, we affirm the decision of the Claims Commission.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Claims Commission Affirmed**

ARNOLD B. GOLDIN, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and JOHN W. MCCLARTY, J., joined.

Christopher Smith and David Randolph Smith, Nashville, Tennessee, for the appellants, Curtis Pierce and Hannah Pierce.

Herbert H. Slattery, III, Attorney General and Reporter; Andrée S. Blumstein, Solicitor General; and Heather C. Ross, Senior Assistant Attorney General, for the appellee, State of Tennessee.

## OPINION

### BACKGROUND AND PROCEDURAL HISTORY[1]

This case stems from a tragic accident at Cummins Falls State Park ("the Park") on June 9, 2019, when Steven Pierce, the two-year-old son of Curtis and Hannah Pierce,

---

[1] Because the case was resolved at the motion to dismiss stage, the factual allegations of the complaint must be accepted as true.  *See Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 696 (Tenn. 2002) ("In reviewing a motion to dismiss, the appellate court must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences.").

drowned after a flash flood at the Park. Following the death of Steven, his parents ("the Pierces") sought to hold the State of Tennessee ("the State") liable and, in alleging negligent and grossly negligent behavior, contended that the State had breached a duty to make the Park safe for visitors. The operative complaint against the State, filed in the Claims Commission, averred that the State owned the Park and that its immunity had been waived against the asserted claims in the complaint pursuant to Tennessee Code Annotated section 9-8-307(a)(1)(C) and section 9-8-307(a)(1)(E). As part of their allegations, the Pierces also averred that certain assumed duties had been breached by the State.

According to the complaint, the Pierces traveled with their son to the Park on the date of the underlying incident from their home in Eddyville, Kentucky. They had never been to the Park before and were accompanied by Mr. Pierce's brother and a family friend. The Park had been closed the previous two days because of rain, and rain was also in the weather forecast on the date of the Pierces' trip to the Park. Sometime between noon and 12:30 p.m., the National Weather Service called officials at the Park and advised that rain was coming to the area.

The Pierce family arrived at the Park around 2:00 p.m., and upon their arrival, Park Rangers instructed the family to "be safe" and "get out of the water if you hear the whistle blow." Later, sometime between 3:00 and 3:30 p.m., Mr. Pierce arrived at the falls area with Steven. The weather was clear at that time.

The State provides life jackets adjacent to the swimming hole area, not at the "Trail Waypoint," where the "Falls Route," a .5 mile route that proceeds along the water's edge, begins. Mr. Pierce placed a State-provided life jacket on his son, but he returned it to the life jacket station adjacent to the falls as required before beginning to make his way out of the Park at approximately 5:00 p.m.

As Mr. Pierce began his return back along the Falls Route with his son in his arms, Park Rangers suddenly blew their whistles. Floodwaters had begun to pour over the falls. Park Rangers told guests to get out of the water and to go back towards the Trail Waypoint. Subsequently, Park Rangers changed their instructions, telling guests to instead seek high ground. The Pierces' family friend, who was behind Mr. Pierce and his son, called to Mr. Pierce to try to convey the new instructions from the Rangers, but when he turned to Mr. Pierce, he saw him trying in vain to grab on to rocks and then saw the floodwaters sweep Mr. Pierce and his son around the bend. Tragically, Steven Pierce was ultimately swept from his father's arms and drowned.

As detailed in the complaint, another deadly flash flood incident had previously occurred at the Park in 2017. During that event, one woman drowned after being swept away in a flash flood, and another died during the search for the woman who was swept away. As with the 2019 incident at issue, the weather was clear at the time the flash flooding began in 2017. Although the Park announced plans to install water gauges

following the 2017 event in order to better monitor rising water levels upstream, these plans were not implemented before the death of the Pierces' son.

After the Pierces filed their complaint, the State moved to dismiss it on the ground that it was barred by Tennessee's recreational use statute, Tenn. Code Ann. § 70-7-101 *et seq.* Under the recreational use statute, a "landowner, lessee, occupant, or any person in control of land or premises," subject to certain exceptions, "owes no duty of care to keep such land or premises safe for entry or use by others for . . . [certain][2] recreational activities." Tenn. Code Ann. § 70-7-102. In the same vein, absent a delineated exception, the landowner is not required to give any warning of "hazardous conditions, uses of, structures, or activities on such land or premises to any person entering on such land or premises for [recreational purposes.]" *Id.* The State further asserted that the Pierces' action fell outside of Tennessee Code Annotated section 9-8-307(a)(1)(E), which, as noted earlier, was one of the statutory provisions relied upon by the Pierces for a waiver of the State's sovereign immunity.

The Claims Commission subsequently entered an order dismissing the Pierces' complaint. A review of the order reflects that the Claims Commission considered all asserted claims to be barred by the recreational use statute. As to the Pierces' pursuit of relief under Tennessee Code Annotated section 9-8-307(a)(1)(E), the Claims Commission also specifically concluded that the Pierces were "not the types of persons covered by the statute." Moreover, as to the Pierces' attempt to recover for breach of *assumed* duties pursuant to the principles codified at Tennessee Code Annotated section 9-8-307(c), the Claims Commission separately held that such a theory was not tenable on sovereign immunity grounds. This appeal followed.

## STANDARD OF REVIEW

At issue in this appeal is the Claims Commission's dismissal of the Pierces' complaint. "We review a trial court's resolution of a motion to dismiss de novo with no presumption of correctness." *Woodruff by and through Cockrell v. Walker*, 542 S.W.3d 486, 493 (Tenn. Ct. App. 2017). Part of our discussion on appeal involves questions of statutory interpretation. The construction of a statute is also a question of law which is reviewed de novo without a presumption of correctness. *Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300, 308 (Tenn. 2012). Statutory construction starts with an examination of the statute's language, and when the import of a statute is unambiguous, we discern legislative intent from the natural and ordinary meaning of the language employed. *Id.* When a statute is ambiguous, however, courts may reference "the broader statutory scheme, the history of the legislation, or other sources." *Lind v. Beaman Dodge, Inc.*, 356 S.W.3d 889, 895 (Tenn. 2011). Also at issue is the jurisdiction of the Claims Commission,

---

[2] As discussed later, although there are specific types of recreational activities listed in the statute, the list is not an all-inclusive one.

- 3 -

another question of law that we review de novo with no presumption of correctness. *Mullins v. State*, 320 S.W.3d 273, 278 (Tenn. 2010).

## DISCUSSION

*Preliminary Discussion and Overview of Concepts and Legal Claims at Issue*

This appeal involves the consideration of two separate legal concepts of immunity. The first concept—that of sovereign immunity—is triggered for our consideration due to the fact that the State is the defendant in this action. The second legal concept at issue relates to the application of Tennessee's recreational use statute, a statute which our Supreme Court has noted "provides the State with limited immunity for injuries occurring on state-owned property during recreational use." *Parent v. State*, 991 S.W.2d 240, 242 (Tenn. 1999).[3]

The doctrine of sovereign immunity has been a part of the common law of Tennessee for well over a century and derives from feudal notions of the divine right of kings. *Hawks v. City of Westmoreland*, 960 S.W.2d 10, 14 (Tenn. 1997). The doctrine provides that a lawsuit may not be brought against a governmental entity unless that entity has consented to be sued. *Id.* Our own State Constitution reflects the doctrine. *Northland Ins. Co. v. State*, 33 S.W.3d 727, 729 (Tenn. 2000). Article 1, section 17 of the Tennessee Constitution states that "[s]uits may be brought against the State in such manner and in such courts as the Legislature may by law direct." As is relevant here, we observe that the Legislature has "waived [the State's] sovereign immunity as to certain actions brought before the Tennessee Claims Commission." *Brown v. State*, 333 S.W.3d 102, 104 (Tenn. Ct. App. 2010) (quoting *Morton v. State*, No. M2008-02305-COA-R3-CV, 2009 WL 3295202, at *2 (Tenn. Ct. App. Oct. 13, 2009)).

The specific categories of claims for which suits against the State are authorized are listed in Tennessee Code Annotated section 9-8-307. *See* Tenn. Code Ann. § 9-8-307(a)(1) (providing that the "commission or each commissioner sitting individually has exclusive jurisdiction to determine all monetary claims against the state based on the acts or omissions of 'state employees,' as defined in § 8-42-101, falling within one (1) or more of the following categories"). At issue here are the categories listed in Tennessee Code Annotated section 9-8-307(a)(1)(C) and Tennessee Code Annotated section 9-8-307(a)(1)(E):

> (C) Negligently created or maintained dangerous conditions on state controlled real property. The claimant under this subdivision (a)(1)(C) must establish the foreseeability of the risks and notice given to the proper state

---

[3] As explained later in this Opinion, however, the recreational use statute is by no means limited to the State in its application.

officials at a time sufficiently prior to the injury for the state to have taken appropriate measures;

. . . .

(E) Negligent care, custody and control of persons;

Tenn. Code Ann. § 9-8-307(a)(1). As noted earlier in this Opinion, the Pierces pled both of these categories in their complaint, while also specifically asserting that the State had breached assumed duties to guard and warn against dangerous conditions at the Park. As support for their pursuit of relief based on alleged assumed duties by the State, the Pierces referred to Tennessee Code Annotated section 9-8-307(c), which provides that the State's liability "shall be based on the traditional tort concepts of duty." Tenn. Code Ann. § 9-8-307(c).

A review of this complaint reveals that the Pierces are complaining about the State's failure to keep the Park safe for recreational users, including the State's failure to give proper warnings of impending floodwaters. In light of these allegations, their decision to invoke Tennessee Code Annotated section 9-8-307(a)(1)(C) is analytically sound. Indeed, although the State is by no means an insurer of the safety of those who enter upon its land, *Byrd v. State*, 905 S.W.2d 195, 197 (Tenn. Ct. App. 1995), concerns of *sovereign immunity* pose no impediment to the Pierces' efforts to raise the allegations that they do. The Supreme Court has observed that Tennessee Code Annotated section 9-8-307(a)(1)(C) codifies a right against the State as landowner, *Parent*, 991 S.W.2d at 242, and this Court has previously opined that the provision "removes the state's immunity to the same extent as the obligation of a private owner or occupier of land" and "merely codifies the common law obligation of the owner or occupier of land." *Sanders v. State*, 783 S.W.2d 948, 951 (Tenn. Ct. App. 1989). Of course, as discussed in detail *infra*, although sovereign immunity may not pose a specific concern to the Pierces' theory of recovery, the immunity afforded to the State under the recreational use statute does.

As for the Pierces' invocation of Tennessee Code Annotated section 9-8-307(a)(1)(E) and their assertion that the State "was negligent in its custody, care, or control of persons" by, among other things, "opening the park on June 9, 2019," we note again that the Claims Commission held that the Pierces were "not the types of persons covered by the statute." As will be discussed more precisely below, we agree with the Claims Commission that the Pierces' son was not in the State's "care," "custody," or "control" merely as a result of his being a visitor to the Park.

In *Learue by Learue v. State*, a teenage boy sustained injuries in a roped-off area of a lake at Chickasaw State Park, and when a claim for the boy's injuries came to be considered by the Claims Commission, the Commissioner determined that jurisdiction existed to consider the claim under the very categories relied upon by the Pierces herein.

*Learue by Learue v. State*, 757 S.W.2d 3, 5 (Tenn. Ct. App. 1987). On appeal, we expressed no reservations about the Commissioner's conclusion regarding the "Negligently created or maintained dangerous conditions on state controlled real property" category, which is currently codified at Tennessee Code Annotated section 9-8-307(a)(1)(C), but we stated that a fair reading of the "Negligent care, custody and control of persons" category establishes that "the legislature intended that [it] was to pertain to persons confined to penal institutions, residences, or health and other similar facilities maintained by the state." *Id.*

Since *Learue*, our Supreme Court has indicated that the "care, custody and control" language in Tennessee Code Annotated section 9-8-307(a)(1)(E) should be read in the disjunctive, and thus, the State could face liability under this provision for negligent "control" of a person, even if the person was not in the State's "care" or "custody." *Stewart v. State*, 33 S.W.3d 785, 792 (Tenn. 2000). Properly understood, therefore, the provision "is not limited to persons confined in institutions maintained by the State." *Byrd v. State*, 150 S.W.3d 414, 419-20 (Tenn. Ct. App. 2004). In any event, according to another Supreme Court opinion issued nearly ten years after the *Stewart* decision, there is some overlap between these independent concepts of "care," "custody," and "control." *See Mullins*, 320 S.W.3d at 280 (observing how the concept of "custody" was intertwined with the other concepts). As far as the concept of "control" is concerned, past case law has spoken to a concern for whether the claimant was "under the *immediate* physical 'control' of the state," *Kaiser v. State*, No. 01-A-019110BC00359, 1992 WL 141014, at *3 (Tenn. Ct. App. June 24, 1992) (emphasis added),[4] and when referencing the concept of "custody" under Tennessee Code Annotated section 9-8-307(a)(1)(E), the Supreme Court noted, as we just alluded to, that the definition of "custody" elsewhere in the Code embraces both the concepts of "care" and "control." *See Mullins*, 320 S.W.3d at 280 (emphases added) (quoting Tenn. Code Ann. § 37-1-102(b)(8) (2005 & Supp. 2009)) ("Our legislature has defined 'custody' as meaning 'the *control* of actual physical *care* of the child and includes the right and responsibility to provide for the physical, mental, moral and emotional well-being of the child.'").

Setting aside any questions as to whether the recreational use statute might bar what are in effect premises liability claims of persons that are otherwise somehow properly understood to be in the State's "care," "custody," or "control,"[5] we agree with the Claims Commission here that, based on the factual allegations in the complaint, jurisdiction did not exist under Tennessee Code Annotated section 9-8-307(a)(1)(E). As the complaint plainly establishes, the Pierces came to the Park as visitors on a family trip, just as the claimant in *Learue* was simply a visitor/swimmer at a State park. Although without

---

[4] Moreover, in another decision, we referenced how cases interpreting Tennessee Code Annotated section 9-8-307(a)(1)(E) involved "an alleged duty by a state official to exert *physical* control of a person." *Byrd*, 150 S.W.3d at 420.

[5] The Claims Commission separately held in its discussion of this issue that the "Recreational Use Statute precludes liability."

question the precise contours of Tennessee Code Annotated section 9-8-307(a)(1)(E) are not as limited as suggested by this Court's discussion in *Learue*,[6] the same end result obtains in our present analysis. Specifically, we fail to see how the Pierces' son, as a mere Park visitor, was in the "care" of the State, in its "custody," or under its "control"[7] within the meaning of Tennessee Code Annotated section 9-8-307(a)(1)(E).

*Is the Pierces' Action Alleging Negligence by the State Regarding Park Safety and Failure to Properly Warn of Dangerous Conditions Barred by Tennessee's Recreational Use Statute?*

In light of the above discussion, we now shift our attention to whether the Pierces' asserted theory of negligence implicating Tennessee Code Annotated section 9-8-307(a)(1)(C) should have been allowed to proceed in the Claims Commission. As noted earlier, the Claims Commission held that the State was immune pursuant to the recreational use statute. This holding remains the primary point of contention in this appeal.

As we briefly addressed earlier in this Opinion, the Pierces' attempt to hold the State liable for its alleged negligence as a landowner is not a sovereign immunity concern in light of statutory authority in the Claims Commission Act. *See* Tenn. Code Ann. § 9-8-307(a)(1)(C) (indicating the Claims Commission has jurisdiction for "Negligently created or maintained dangerous conditions on state controlled real property"). Nevertheless, the State's potential liability under Tennessee Code Annotated section 9-8-307(a)(1)(C) is "subject to statutory immunity in certain cases." *Parent*, 991 S.W.2d at 242. As is specifically relevant here, Tennessee's recreational use statute generally provides that, subject to certain exceptions, landowners owe "no duty of care to keep such land or premises safe for entry or use by others for . . . recreational activities" and are not required to give any warning of "hazardous conditions, uses of, structures, or activities on such land or premises to any person entering on such land or premises for [recreational purposes.]" Tenn. Code Ann. § 70-7-102. Thus, what Tennessee Code Annotated section 9-8-307(a)(1)(C) does to remove immunity from the State, the recreational use statute taketh away.

---

[6] Again, the provision "is not limited to persons confined in institutions maintained by the State." *Byrd*, 150 S.W.3d at 419-20.

[7] The Pierces' complaint, at the end of their denominated "Negligent Custody, Care, or Control of Persons" count, also contains a *conclusory* assertion, without further explanation, that the State "assum[ed] a duty of care, custody, and control over park visitors." The complaint does, however, in the denominated "Breach of an Assumed Duty" count, speak to various breaches of assumed duties of *care*. The essence of what the Pierces are challenging regarding the State's alleged assumption of duties of care relates to the State's alleged negligence in protecting their son from dangerous floodwaters on the property. This alleged negligence is thus coterminous with negligent behavior that is otherwise immunized under Tennessee's recreational use statute. As discussed at length later in this Opinion, we conclude that the Pierces' allegations pertaining to asserted assumed duties of care do not take this case outside the ambit of the recreational use statute.

Tennessee's recreational use statute was originally enacted in 1963 and is part of a trend by state legislatures that began in the mid-20th century to limit property owners' liability when persons used the owners' property for recreational purposes. *Morgan v. State*, No. M2002-02496-COA-R3-CV, 2004 WL 170352, at *4 (Tenn. Ct. App. Jan. 27, 2004). Affected property owners under Tennessee's current iteration of the statute include governmental entities. Tenn. Code Ann. § 70-7-101. More precisely, Tennessee's statute legislates on the duties owed by "landowners." A "landowner," which "includes any governmental entity," means "the legal title holder or owner of such land or premises, or the person entitled to immediate possession of the land or premises, and includes any lessee, occupant or any other person in control of the land or premises." *Id.*[8] The concepts of "land" and "premises" also have defined meanings within the statute. Specifically, "unless the context otherwise requires," the statute instructs that:

> (1)(A) "Land" or "premises" means and includes all real property, waters, private ways, trees and any building or structure that might be located on real property, waters and private ways;
> (B) "Land" or "premises" includes real property, waters, private ways, trees and any building or structure located on the land or premises, owned by any governmental entity, including, but not limited to, the Tennessee valley authority; and
> (C) "Land" or "premises" does not include the landowner's principal place of residence and any improvements erected for recreational purposes that immediately surround such residence, including, but not limited to, swimming pools, tennis or badminton courts, barbecue or horse shoe pits, jacuzzis, hot tubs or saunas;

*Id.*

In addition to the general removal of a duty of care to keep land safe for recreational users and to warn of hazardous conditions, a no-duty rule which Tennessee Code Annotated section 70-7-102 establishes, another provision in the recreational use statute makes clear that when a landowner gives permission to another to engage in certain recreational activities, the landowner "does not by giving such permission" "[c]onstitute the person to whom permission has been granted to legal status of an invitee to whom a duty of care is owed." Tenn. Code Ann. § 70-7-103(2).

*In Parent*, our Supreme Court instructed that a recreational use defense "requires a two-pronged analysis," noting that the necessary inquiries are:

---

[8] Notwithstanding the broad nature of the term "landowner" under the statute and its inclusion of "any lessee, occupant or any other person in control of the land or premises," Tenn. Code Ann. § 70-7-101, Tennessee Code Annotated section 70-7-102 provides that the "landowner, lessee, occupant, or any person in control of land or premises owes no duty of care to keep such land or premises safe for entry or use by others for . . . recreational activities." Tenn. Code Ann. § 70-7-102(a).

(1) whether the activity alleged is a recreational activity as defined by the statute; and if so, (2) whether any of the statutory exceptions or limitations to the immunity defense are applicable. If Tenn. Code Ann. § 70-7-102 is applicable and no exceptions apply, the State is immune. If Tenn. Code Ann. § 70-7-102 is applicable but an exception is also applicable, the State may be subject to liability. The State's liability, however, is still governed by and subject to the claims commission statute.

*Parent*, 991 S.W.2d at 243. Subsequent to the *Parent* decision, then-Judge Koch authored an opinion for this Court expressing his view that a "three-step analysis" is required. *Morgan*, 2004 WL 170352, at *5. In articulating the relevant considerations, he wrote as follows:

First, the court must determine whether the party asserting the Tenn. Code Ann. § 70-7-102 defense is a landowner. Second, the court must determine whether the activity in which the injured party was engaged at the time of the injury is a recreational activity. Third, the court must determine whether any of the exceptions in Tenn. Code Ann. § 70-7-104 are applicable to the case.

*Id.* No doubt, the first step identified by then-Judge Koch in *Morgan* is fairly implied as a necessary consideration from *Parent*, even though not formally a part of *Parent*'s outlined "two-pronged analysis." *Parent*, 991 S.W.2d at 243. In other words, *Parent*'s two-pronged inquiry appears to presuppose that a statutory "landowner" has asserted a recreational use defense, and the two-pronged analysis is what is used to determine whether that landowner is immune.

Although this Court has noted that the language in the recreational use statute "indicates that it applied the moment a visitor enters the property for a recreational purpose, even if the visitor has not yet begun the recreational activity," *Mathews v. State*, No. W2005-01042-COA-R3-CV, 2005 WL 3479318, at *4 (Tenn. Ct. App. Dec. 19, 2005), this is not to say that a party's participation in, or plans to engage in, recreational activity absolves a landowner from all potential legal liability. The tests from *Morgan* and *Parent* may not even apply. "The Tennessee Recreational Use Act primarily addresses a landowner's duty to keep the land or premises safe or to warn of danger, hazardous conditions or activities on the land." *Wilkerson v. Altizer*, 845 S.W.2d 744, 750 (Tenn. Ct. App. 1992). Indeed, as the Sixth Circuit recently opined in reference to our statute, "*Parent*'s context indicates that its test applies only to causes of action arising from duties to maintain safe land or warn against hazardous conditions." *Huls v. Davis*, 835 F. App'x 845, 851 (6th Cir. Nov. 20, 2020).

Here, of course, the *Parent* and *Morgan* considerations are in play given the nature of what the Pierces have alleged in their pursuit of damages against the State pursuant to

Tennessee Code Annotated section 9-8-307(a)(1)(C). Do these considerations establish that the State is immune, or do they establish the Pierces' right to pursue recovery under the Claims Commission Act? Those are the ultimate questions before us in this appeal, and in addressing them, we initially take note of the following two facts: (1) this case came to us for review following the Claims Commission's adjudication of the State's motion to dismiss and (2) the recreational use statute is, as *Parent* indicates, an affirmative defense. *Parent*, 991 S.W.2d at 242. In order for an affirmative defense such as the recreational use statute to be successfully asserted on a motion to dismiss,

> the applicability of the defense must "clearly and unequivocally appear[ ] on the face of the complaint." *Givens v. Mullikin ex rel. Estate of McElwaney,* 75 S.W.3d 383, 404 (Tenn. 2002) (quoting *Anthony v. Tidwell*, 560 S.W.2d 908, 909 (Tenn. 1977)). In other words, the plaintiff's own allegations in the complaint must show that an affirmative defense exists and that this defense legally defeats the claim for relief. *See Ragsdale v. Hill*, 37 Tenn.App. 671, 681, 269 S.W.2d 911, 916 (1954) (holding that a demurrer asserting res judicata was improper when the petition being challenged did not mention the prior decree); *see also* 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357, at 713–14 (3d ed. 2004).

*Jackson v. Smith*, 387 S.W.3d 486, 492 (Tenn. 2012) (internal footnote omitted).

A review of the complaint in this matter reveals that the State's recreational use defense has merit. First, the State is clearly a statutory "landowner," as the complaint avers that the State owns the property at issue in this litigation. Second, according to the factual allegations that appear, the Pierces' son was engaging in recreational activity. Shortly before the tragic accident that occurred, Mr. Pierce and his son had been in the falls area of the Park and, at the time of the tragedy, were traveling back along a hike route. Although the list appearing in Tennessee Code Annotated section 70-7-102 is "neither exclusive nor exhaustive" as to what qualifies as recreational activity, as "activities similar to those explicitly enumerated . . . may also fall within the purview of the recreational use statute," *Parent*, 991 S.W.2d at 243, section 70-7-102 notably includes "water sports" and "hiking" as examples of recreational activity. Tenn. Code Ann. § 70-7-102.

The primary dispute, as we perceive it, relates to the last point of inquiry outlined in both *Parent* and *Morgan*, namely whether any exceptions to the recreational use statute exist. Certainly, a plaintiff is not required to plead the exceptions that can potentially exist to a landowner's recreational use immunity. *Parent* is clear on that proposition given its recognition that the recreational use defense is an affirmative one. *See Parent*, 991 S.W.2d at 242. Of course, as noted above, an affirmative defense can be raised on a motion to dismiss if the defense clearly appears on the face of the complaint, *Jackson*, 387 S.W.3d at 491-92, and here, the facts pleaded indicate that the defense is viable and that the Pierces'

continued pursuit of recovery is therefore barred.

Indeed, although the Pierces rely upon both of the provisions that are currently included under Tennessee Code Annotated section 70-7-104(a), neither of these purported exceptions applies based on what the Pierces are alleging. The first exception relied upon by the Pierces is codified at Tennessee Code Annotated section 70-7-104(a)(1) and provides that the recreational use statute does not limit the liability that otherwise exists for "[g]ross negligence, willful or wanton conduct that results in a failure to guard or warn against a dangerous condition, use, structure or activity." Tenn. Code Ann. § 70-7-104(a)(1). This exception has been the subject of frequent litigation in our courts, *see, e.g.*, *Bishop v. Beckner*, 109 S.W.3d 725, 729 (Tenn. Ct. App. 2002), but as is of substantial importance to the present case, we observe that the General Assembly greatly curtailed the limits of this exception through legislation in 2009, enacting the provision codified at Tennessee Code Annotated section 70-7-104(b). Pursuant to that provision, "[the gross negligence exception] shall not be construed to impose liability or remove the immunity conferred by § 70-7-102 for failure to guard or warn of a dangerous condition *created by forces of nature*." Tenn. Code Ann. § 70-7-104(b) (emphasis added). The relevance of this qualification to the facts of the present case should be apparent. The Pierces' action is predicated on alleged negligence of the State in failing to guard against and properly warn of the floodwaters that manifested on the Park property due to prior rainfall. The complaint does not admit of anything other than that the dangerous condition, i.e., the floodwaters, was created by forces of nature.[9] Thus, per Tennessee Code Annotated section 70-7-104(b), the first statutory exception is not available to remove the immunity conferred by section 70-7-102.

In arguing against the notion that application of the 2009 amendment bars the first statutory exception, the Pierces point to case law where parties have litigated the issue of whether an *injury* was caused by an "Act of God." *See, e.g.*, *Butts v. City of S. Fulton*, 565 S.W.2d 879, 882 (Tenn. Ct. App. 1977) (discussing when a "misadventure or casualty is said to be caused by the 'Act of God'"). Specifically, they submit that the phrase "force of nature" is interchangeable with "Act of God," even offering a portion of a quote from *Tennessee Farmers Mutual Insurance Co. v. Hinson*, 651 S.W.2d 235 (Tenn. Ct. App. 1983), in their own explanatory parenthetical of that case, which in part related the *Hinson* holding as follows: "holding that the trial court erred in instructing the jury on 'forces of nature, that is, an act of God.'" The Pierces' basic argument is that injuries caused by acts of God are of a character that they cannot be averted with prudence or foresight and that the present case does not satisfy this standard. Respectfully, the case law relied upon by the Pierces is inapposite, as it deals with an issue that is not an object of concern in the

---

[9] Beyond the allegations of the complaint, we note that a portion of the Pierces' appellate brief appears to concede the point, where the Pierces argue, when specifically discussing the State's liability under the Claims Commission Act, that "[it] may be held liable for dangerous conditions . . . even if [it] did not *create* those conditions." (emphasis in original)

statute. Perhaps most importantly, we observe that the inquiry in Tennessee Code Annotated section 70-7-104(b) is not directed at whether the ultimate injury or casualty should be considered to be caused by forces of nature.[10] Rather, the inquiry to be conducted is whether the "dangerous condition" to be guarded against and warned of, here the floodwaters, was "created by forces of nature." Tenn. Code Ann. § 70-7-104(b). Applying this plain language in reference to the facts pleaded in the complaint, we are compelled to hold that the exception codified at Tennessee Code Annotated section 70-7-104(a)(1) is unavailable. Whether the General Assembly's 2009 curtailment of this exception was sound as a matter of policy is, of course, not for this Court to decide. *See Knox Cty. Educ. Ass'n v. Knox Cty. Bd. of Educ.*, 60 S.W.3d 65, 74 (Tenn. Ct. App. 2001) (noting that it is "not for the courts to question the wisdom of a legislative act"). We are obligated to take the statute as we find it. *Tenn. Manufactured Hous. Ass'n v. Metro. Gov't of Nashville*, 789 S.W.2d 254, 257 (Tenn. Ct. App. 1990).

The second purported exception relied upon by the Pierces—and the only other one potentially available under the current version of the statute—is codified at Tennessee Code Annotated section 70-7-104(a)(2). Pursuant to this particular provision, the recreational use statute does not limit the liability that otherwise exists for

> [i]njury caused by acts of persons to whom permission to hunt, fish, trap, camp, hike, sightsee, cave, recreational noncommercial aircraft operations or recreational noncommercial ultra light vehicle operations on private airstrips, or any other legal purpose was granted, to third persons or to persons to whom the person granting permission, or the landowner, lessee, occupant, or any person in control of the land or premises, owed a duty to keep the land or premises safe or to warn of danger.

Tenn. Code Ann. § 70-7-104(a)(2). Although we do not find this provision applicable for the specific reasons that we will discuss *infra*, its exact parameters are not entirely clear to us at first glance. The parties are not in agreement as to its contours, and the State itself has offered multiple potential readings of the provision throughout the course of this litigation, with varying degrees of conviction, speculation, and points of emphasis. As to this last concern, we are of the opinion that the State's arguments are not always clear as to the specific larger point they intend to advance, even when they are otherwise stated in direct terms.

Without getting into extensive details regarding the State's various articulated arguments evidenced both by the record and appellate briefing, we merely note that, in

---

[10] As it is, the "Act of God" case law cited to by the Pierces does not relate acts of God to unqualified "forces of nature." When more fully presented, the quote from *Hinson* that the Pierces offered reads as follows: "**unusual and extraordinary manifestations** of the forces of nature, that is, an act of God." *Hinson*, 651 S.W.2d at 238 (emphasis added).

places, the State has advocated that this provision is essentially a mere reminder that *non-landowners* do not in any way have immunity afforded to landowners.  In other places, the State has stated that the provision "provides an **immunity exception**," one contingent on "injury caused by the act of a permittee."   (emphases added)  Inasmuch as the only immunity directly afforded under the statute is in relation to statutory landowners, *see* Tenn. Code Ann. § 70-7-102 (noting that the landowner owes no duty); *Mathews*, 2005 WL 3479318, at *3 (noting that the recreational use statute provides a defense "for a landowner"), the phrasing of this latter argument necessarily appears to contemplate that Tennessee Code Annotated section 70-7-104(a)(2) somehow speaks to potential landowner liability.   Additionally, we observe that the State also engaged briefly in the Claims Commission with the prospect that Tennessee Code Annotated section 70-7-104(a)(2) "might clarify that other common law liability [of the landowner] is not affected."

The lack of definitive coherency among the State's various arguments (and focal points) and the lack of an agreement among the parties as to the provision's meaning is not necessarily a surprise to us.  As alluded to earlier, the provision itself appears rather curious upon initial examination.  The language utilized has even prompted one legal commentator to observe as follows: [Q]uite frankly, [the provision] is confusing to this public school graduate."  John Day, *Recreation Limits Litigation*, 45 Tenn. B.J. 35, 42 (May 2009). There are interesting reasons that could cause one to argue that the provision might perhaps be responsive to more than one concern, but there is definitely still a good measure of confusion.   Indeed, one court has even gone so far as to state that a "textual reading" permits one interpretation, while ultimately going on to countenance an entirely different one.  *Cagle v. U.S.*, 937 F.2d 1073, 1077 (6th Cir. 1991).[11]

The debate over the provision's precise meaning has been fueled on appeal in part by the fact that a semicolon used to appear within the provision after the word "granted," a fact we have pointed out in a prior footnote. The Pierces take great issue with this in their appellate brief, arguing as follows:

> The statute contained the semicolon until 2005, when the legislature enacted a sweeping recodification[.] . . . After the recodification, the semicolon disappeared.  But the 2005 recodification, by the express intent of the legislature, did not change the meaning or interpretation of any statute. (T.C.A. § 1-1-108, "the commission shall not alter the sense, meaning or effect of any act of the general assembly.")  Thus, T.C.A. § 70-7-104(a)(2) should be read as enacted, as though it contained the semicolon.

---

[11] The statute's presentation was slightly different at the time *Cagle* was decided.  For instance, the *Cagle* court interpreted a codified version of the statute that in part read "was granted; to third persons," where the current codification reads in part as "was granted, to third persons."  As noted herein, the removal of the semicolon that used to appear is a point of contention for the Pierces.  As a technical matter, we also observe that the earlier version of the statute reviewed by *Cagle* had fewer recreational activities specifically listed.

As for how the Pierces specifically suggest that Tennessee Code Annotated section 70-7-104(a)(2) should be read, they largely pinpoint the language appearing after the former semicolon and contend that the provision speaks in part to injuries "to persons to whom . . . the landowner . . . owed a duty to keep the land or premises safe or to warn of danger." The larger aim of this specific reading, as will be discussed later in this Opinion, is to bolster the Pierces' contention that they may pursue their assumed duty allegations. Left unsaid by the Pierces is what the balance of the language appearing before the former semicolon was intended to address. As far as we can tell, they offer no direct explanation of this matter. We might speculate that they likely believe it to address the same general concern that the State specifically argued in favor of during the hearing on its motion to dismiss, that is, that the language serves as a reminder that a recreational permittee, or other non-landowner, is liable for the damages he or she causes and is not afforded immunity available to the landowner. Whether this is the Pierces' actual position, of course, we cannot conclusively say.[12]

---

[12] In addition to principally advocating for the proposition that the provision speaks to potential landowner liability and that such liability is evidently *not* predicated on the existence of an injury caused by a recreational permittee, the Pierces' arguments concerning Tennessee Code Annotated section 70-7-104(a)(2) are also devoted to addressing the Claims Commission's articulated reason for finding the provision inapplicable. For its part, the Claims Commission held the provision does not apply "because this case does not involve a duty to third persons caused by acts of persons to whom permission was given." To narrowly focus on the causation element of this holding for a moment, the holding literally reads that "this case does not involve a duty . . . caused by acts of persons to whom permission was given." No doubt, we suspect the Claims Commission may have intended to state that this case does not involve an *injury* caused by acts of persons to whom permission was given to third persons who were owed a duty. This is certainly the focus of the State's advocacy in its appellate brief, wherein the State argues that "[c]laimants do not allege an injury caused by the act of a permittee." Yet, whereas the Claims Commission's holding was somewhat confusing inasmuch as it textually related that there was no "duty" "caused by" acts of persons, its holding was direct in another sense inasmuch as it placed emphasis on the fact that "this case does not involve a duty to third persons." As we perceive it, this language suggests that the Claims Commission was of the opinion that a recreational permittee such as the Pierces' son was not *potentially* contemplated by this provision. That is, notwithstanding any other questions that might surround the meaning of the provision, the Claims Commission considered it to only speak to and implicate plaintiffs who are "third persons."

As to the conclusion that this provision must necessarily involve "third persons," that is someone outside of the group of persons to whom permission was given, we agree with the Pierces' argument on appeal that this particular determination by the Claims Commission was in error. The provision does not simply relate to "third persons." As evident from the text, the portion of the provision concerning "third persons" is immediately followed by the words "or to persons to whom the person granting permission, or the landowner, lessee, occupant, or any other person in control of the land or premises, owed a duty." Tenn. Code Ann. § 70-7-104(a)(2). The decision to include this additional language after "third persons" indicates that "third persons" are not the only focus here. Indeed, we may presume that the General Assembly "used every word deliberately and that each word has a specific meaning and purpose." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 527 (Tenn. 2010). There should be no doubt on *this* particular point based on the text in Tennessee Code Annotated section 70-7-104(a)(2), and we observe that another provision in the statutory scheme points in the same direction. *See* Tenn. Code Ann. § 70-7-103(3) (contemplating that a landowner

- 14 -

In light of the above arguments, we are presented with a few basic questions. Is this provision about the landowner's liability, or is it a mere "reminder" that non-landowners have no immunity? If about the landowner's liability, is the exception only somehow triggered when another permittee or non-landowner plays a role in causing the injury to which the landowner's negligence contributed? As alluded to before, although there are compelling considerations supporting the notion that this provision contemplates some type of an exception to a landowner's immunity,[13] there has also already been prior judicial discourse conversely suggesting that the provision must have been intended as a mere reminder that *non-landowners* entering the property remain non-immune for the damage they cause.[14] This latter understanding was essentially the argument that the State advanced

can incur liability for an injury to "such person [to whom permission has been granted] or purposely caused by any act of such person" *as provided in* Tennessee Code Annotated section 70-7-104).

[13] First, we note that the legislative history accompanying the initial passage of this provision revealed a concern for how a *landowner's liability* could be affected. Specifically, when the "to persons" language in the statute was added after the words "third persons" by way of an amendment (incidentally the same amendment pursuant to which the disputed, and now removed, semicolon was added), this was done in response to a concern that the prior language could have affected liability of landowners to guests and invitees. As stated by a senator when explaining the amendment, "The language in the first section of the bill was so broad it might have affected liability of landowners to licensees, guests, invitees; and the language amending the latter part of the bill merely is to clarify it—and the Senator from Hamilton concurs with me." To the extent that this concern for "invitees" may appear to run counter to the notion expressed in Tennessee Code Annotated section 70-7-103(2) (particularly when considered in light of the fact that the "to persons" language appears to textually relate to people within the permitted group for the reasons stated in the previous footnote), a potential distinction could be drawn between mere recreational users and those who are otherwise invitees and later happen to engage in recreational activities. A recent Sixth Circuit case has opined that our statute does not foreclose such a distinction. *See Huls*, 835 F. App'x at 850 (stating that "while the mere grant of permission to use land for a recreational purpose cannot elevate a permittee to invitee status, a landowner may take other actions that do confer that status").

The legislative history notwithstanding, similar signals that this provision may deal with landowner liability are included in the text of the provision itself, which in part deals with the concern of whether a "landowner . . . . owed a duty." Tenn. Code Ann. § 70-7-104(a)(2). Why would a landowner's duties be relevant in any sense to a subject of liability involving another party, assuming this provision was solely a reminder or clarification of non-landowners' lack of immunity? Additionally, another provision in the statutory scheme, Tennessee Code Annotated section 70-7-103(3), points to Tennessee Code Annotated section 70-7-104 generally for examples of contemplated liability to *the landowner*. *See* Tenn. Code Ann. § 70-7-103(3) (noting that a landowner does not by giving permission "[a]ssume responsibility for or incur liability for any injury to such person or purposely caused by any act of such person to whom permission has been granted except as provided in § 70-7-104"). Of course, there is also Tennessee Code Annotated section 70-7-102, which points generally to Tennessee Code Annotated section 70-7-104 for exceptions to the no-duty rule. *See* Tenn. Code Ann. § 70-7-102(a) (absolving landowners of a duty "except as provided in § 70-7-104").

[14] Interestingly, as alluded to before, the Sixth Circuit noted in *Cagle* that a "textual reading" of our statute, albeit the version with the former semicolon, permitted an interpretation contemplating potential landowner liability. *Cagle*, 937 F.2d at 1077. The *Cagle* court, however, ultimately disclaimed this textual reading as one "almost certainly not intended by the drafters of the statute," and opined that "[a] more plausible interpretation of this section is that it was drafted to prevent the statute from being used as a shield by a third-party tortfeasor who, while on the landowner's property with the landowner's permission, injures

- 15 -

at the hearing on its motion to dismiss.

For purposes of this appeal, we do not need to definitively rule on the many questions raised by the provision, as intriguing as they may be. A definitive answer might be demanded in a future case,[15] but in the present appeal, we can adequately resolve the case accepting either side's apparent primary reading of the statute. That is because the facts of the complaint dictate that the provision is unavailable to the Pierces even if the provision is construed to constitute a true *exception* to a landowner's immunity, as would be necessary for the Pierces to invoke it against the State here.

Indeed, whether the provision is read through the primary lens of the State or under the interpretation advanced by the Pierces, the State's immunity under the recreational use statute is undisturbed. For instance, assuming *arguendo* that this provision should be construed in line with what the State appeared to argue at the hearing on its motion to dismiss and be treated as a mere reminder that non-landowners do not have immunity,[16] it obviously has no bearing here on the Pierces' efforts to hold the State, a landowner, liable. If, on the other hand, the provision is construed to speak at least in part to a landowner's potential liability, as argued by the Pierces, relief is, as discussed below, similarly unavailable.

In our view, assuming *arguendo* that the provision speaks to landowner liability, there are only two possibilities of interpretation that are in any sense potentially reasonable. The first reading essentially tracks the "textual reading" of the previously-cited *Cagle* decision, which considered the *text* of the provision, albeit the version with the semicolon, to permit an interpretation of possible landowner liability for injuries caused by other recreational users.[17] Obviously this exception is not even theoretically available here under such a reading, as the actions of other recreational users are not at issue. As discussed

_____

someone else on the landowner's property." *Id.* Understanding the provision as a simple reminder that people entering the land will not have a *landowner's* immunity would not be completely anomalous to this general area of the law, at least as one Louisiana statute much more clearly illustrates. *See* La. Rev. Stat. Ann. § 9:2795(D) ("Nothing in this Section shall be construed to relieve any person using the land of another for recreational purposes from any obligation which he may have in the absence of this Section to exercise care in his use of such land and in his activities thereon, or from the legal consequences of failure to employ such care."). As explained by one Louisiana court, the Louisiana statute was not intended as an additional exception to an owner's immunity but was recognition that a third party may still be held liable for their own negligence. *Moore v. Rice-Land Lumber Co.*, 150 So.3d 657, 661 (La. Ct. App. 2014).

[15] Given that one is not demanded here, we also abstain from offering definitive opinions as to ancillary questions that might emerge under the competing interpretations of the provision.

[16] This apparent argument was something in the vein of *Cagle*'s "more plausible interpretation." It appears the Claims Commission might have been of a similar understanding. Although not clearly included as a specific basis for rejecting the provision where its reasoning appears (which, again, appeared to focus on whether there is a *plaintiff* who is a "third person"), the Claims Commission referred to the provision earlier in its order as pertaining to "third-party liability."

[17] Of course, as we noted, the *Cagle* court ultimately rejected this textual reading, believing it to be one "almost certainly not intended by the drafters of the statute." *Cagle*, 937 F.2d at 1077.

previously, the complaint indicates that the death of the Pierces' son was a consequence of the floodwaters that emerged.[18] The death was not an injury "caused by acts of persons to whom permission . . . was granted." Tenn. Code Ann. § 70-7-104(a)(2).

The second potential reading treating the provision as dealing with an exception to a landowner's immunity is the one advanced by the Pierces, whose interpretation is not circumscribed by the same constraints the *Cagle* court gleaned from the provision's text. As alluded to before, the Pierces' reading excises the "caused by" language and advocates for a potential imposition of landowner liability when there are injuries "to persons to whom . . . the landowner . . . owed a duty to keep the land or premises safe or to warn of danger."[19] Even accepting this textual interpretation as controlling, we are of the opinion that the facts pled in the complaint show that this language is not triggered. Initially, we highlight the language in the provision discussing persons "to whom . . . the landowner . . . owed a duty." *Id.* Incidentally, this is the very language emphasized by the Pierces in their brief on appeal. For the reasons discussed below, we do not consider the Pierces' son to legally fall within the contemplated class of "persons" "to whom . . . the landowner . . . owed a duty to keep the land or premises safe or to warn of danger." *Id.*[20]

As we perceive their brief's developed argument on this point, the Pierces point to this language as signaling that their assumed duty argument is able to be maintained despite the bar otherwise posed by the recreational use statute.[21] The same argument was even preemptively advanced in the complaint itself, where the Pierces contended that the recreational use statute did not provide immunity because the State "undertook and assumed the duty to guard and warn against the dangerous conditions at Cummins Falls and negligently breached this duty." By way of example, in their stylized "Breach of an Assumed Duty" count, the Pierces specifically alleged that a duty of care had been assumed

---

[18] Although the nature of the injury here forecloses application of this exception under the "caused by" component of this reading, whether the Pierces' son was within the contemplated class of persons to whom the landowner "owed a duty" under the exception is also at issue. This matter will be squarely addressed herein with respect to the Pierces' proposed interpretation, as the same point of inquiry will necessarily be triggered for our consideration.

[19] Again, it is not clear to us what specific meaning the Pierces ascribe to the "caused by" language. As alluded to before, we might speculate that they believe it to address the same general concern that the State argued in favor of during the hearing on its motion to dismiss. If so, such a position would construe the language appearing before the former semicolon as a reminder that a recreational permittee is liable for the damages he or she causes, whereas the language generally appearing after the former semicolon signals that a landowner can be liable to those persons they otherwise owed a duty, with such liability not contingent on harm being caused by other recreational users. Whether this dual-reading is the Pierces' actual position regarding the entirety of the provision, of course, we cannot definitively say.

[20] Of course, as explained in a previous footnote in this Opinion, we do agree with the Pierces that the language in the provision does not textually speak solely to "third persons."

[21] To the extent they might contend that the language also speaks to their ability to bring a claim under Tennessee Code Annotated section 9-8-307(a)(1)(E), we need not entertain that question. We have, for the reasons discussed herein, already held that the Claims Commission was without jurisdiction for such a claim based on the facts pled in the complaint.

and then breached by the State's (1) undertaking to implement a stream gauge warning system and then negligently failing to implement that system, (2) providing life jackets but failing to provide those life jackets at the Trail Waypoint, and (3) warning guests of floodwaters but providing negligent instructions.

We do not agree with the Pierces' argument on this point,[22] because as we understand the statute, the language they rely upon appears to speak to duties otherwise owed by the landowner as a general proposition. Indeed, as mentioned elsewhere in this Opinion, when an amendment was made to the recreational use statute incident to its original enactment, the "to persons" language in what is currently Tennessee Code Annotated section 70-7-104(a)(2) was apparently added out of a concern for, among other things, "invitees."[23] We do not interpret the provision as speaking to duties that, while otherwise <u>not owed</u>, are gratuitously assumed. Moreover, there is certainly no other language directly relating that voluntarily assuming the duties not owed under Tennessee Code Annotated section 70-7-102 means one can face liability for behavior that section 102 otherwise immunizes. This, of course, is what the Pierces seek the Claims Commission to allow in this case, as is evident above. The statute does not permit this interpretation in our opinion, even under the Pierces' textual reading. Again, as we construe the specific language relied upon by the Pierces, it appears to simply contemplate someone who is not a mere recreational user, i.e., someone to whom the landowner otherwise owes a duty of care as a general proposition.

Interestingly, our research reveals that the voluntary assumption argument advanced by the Pierces here is not an entirely novel one, as similar issues have been raised with other courts addressing the scope of different states' recreational use statutes. Although not cited by the Pierces for this particular point,[24] *Stephens v. United States* is an example of a decision where the voluntary assumption argument *was* countenanced by a court. In that case, the plaintiff suffered serious injuries when he dove into a lake,[25] and he sued the

---

[22] We are, however, in agreement with another argument offered by the Pierces concerning their allegations regarding assumed duties to guard and warn against the dangerous conditions at the Park. In part, the Claims Commission appeared to reason that such allegations could not be maintained due to concerns of sovereign immunity. Without taxing the length of this Opinion any further, we simply note that the Claims Commission's understanding appears to be foreclosed by our Supreme Court's ruling in *Stewart*, which held that jurisdiction could be predicated on *assumed* duties corresponding to categories under Tennessee Code Annotated section 9-8-307(a). *See Stewart*, 33 S.W.3d at 793 (indicating that, under the Claims Commission Act, jurisdiction could be predicated on assumed duties). Of course, although sovereign immunity may not bar the Pierces' theory of recovery, the application of the recreational use statute does for the reasons stated herein.

[23] The facts of the complaint certainly do not indicate that the Pierces otherwise qualified as invitees, nor do they appear to claim to be.

[24] The Pierces' principal appellate brief references the *Stephens* decision when discussing the issue of the State's alleged gross negligence.

[25] The plaintiff concluded he had struck a tree stump when he attempted to execute a shallow dive; the court noted that there was "no conclusive evidence as to what was struck." *Stephens v. United States*,

United States in federal district court pursuant to the Federal Tort Claims Procedure Act. *Stephens v. United States*, 472 F. Supp. 998, 1001 (C.D. Ill. 1979). In defense of the negligence action asserted against it, the United States argued in part that dismissal was required due to the operation of Illinois' recreational use act. *Id.* at 1002. In response to the government's position, the plaintiff argued that even if Illinois' act may have relieved the owner from any duty of ordinary care to recreational users, the United States had assumed a duty of care by promulgating safety rules and by making inspections. *Id.* at 1010.

In addressing the voluntary assumption argument advanced by the plaintiff, the court in *Stephens* noted that "[s]ound public policy would support the encouragement of safety inspections by the owner or occupier without waiver of defenses under the Recreational Use Act." *Id.* After all, the court observed, "[t]he Recreational Use Act was intended to abrogate certain common-law duties of those covered by the Act." *Id.* Nevertheless, the court considered itself bound by what it called a "stringent rule" from the Illinois Supreme Court regarding gratuitous undertakings and accepted the plaintiff's position as tenable, although it noted that the strength of the referenced Illinois decision had been questioned by at least one appellate court and that its effect had been limited by the legislature. *Id.* at 1010-11. The court also speculated that the Illinois Supreme Court might place limits on the so-called "stringent rule," perhaps finding that "the defendant is not liable absent proof of reliance on its [assumed] inspection measures by the injured plaintiffs." *Id.* at 1011.

Notwithstanding the holding in *Stephens*, as tempered and qualified as it was, the voluntary assumption argument does not appear to have otherwise gained much traction in the courts that have considered it. Indeed, as evidenced by the discussion below, multiple courts have rejected attempts by plaintiffs to circumvent the bar imposed by recreational use statutes by alleging assumed duties of care. In *Klepper v. City of Milford*, for instance, the plaintiff argued that "since both the United States and Milford undertook to create a safe environment at the Milford city park and lake shore, they thereby assumed a common-law duty to do so with reasonable care." *Klepper v. City of Milford*, 825 F.2d 1440, 1448 (10th Cir. 1987). In making this argument, the plaintiff relied on section 323 of the Restatement (Second) of Torts (as the Pierces do here) and section 324A of the Restatement (Second) of Torts to bolster his assertion that the duties and liability reflected in those sections negated the exemption from liability afforded by Kansas' recreational use statute. *Id.* The Tenth Circuit rejected the plaintiff's position, and in doing so, it engaged with the *Stephens* decision we have already referenced herein:

> Klepper is correct in stating that the common-law doctrine of liability embodied in sections 323 and 324A has been recognized by Kansas courts in other contexts. *See Ingram v. Howard-Needles-Tammen &*

472 F. Supp. 998, 1006-07 (C.D. Ill. 1979)

*Bergendoff,* 234 Kan. 289, 672 P.2d 1083 (1983); *Circle Land & Cattle Corp. v. Amoco Oil Co.,* 232 Kan. 482, 657 P.2d 532 (1983); *Schmeck v. City of Shawnee,* 232 Kan. 11, 651 P.2d 585 (1982). Furthermore, the doctrine has been applied, in effect, against the United States in some contexts. *See, e.g., Rayonier, Inc. v. United States,* 352 U.S. 315, 77 S.Ct. 374, 1 L.Ed.2d 354 (1957) (despite unique governmental role of public firefighters, forest service firefighters are not immune from liability under the FTCA if private individuals would be liable under like circumstances); *Indian Towing Co. v. United States,* 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955) (despite unique government function of operating Coast Guard lighthouse, government is not immune from liability for its negligent operation of lighthouse). The issue, however, is whether that doctrine should be recognized in the context of the RUS, an issue of first impression in Kansas.

In support of his proposition Klepper relies primarily on a decision from the Illinois district court, *Stephens v. United States,* 472 F.Supp. 998 (C.D.Ill.1979). True, *Stephens* held that "by undertaking to promulgate rules and make inspections, the United States may be liable for negligence even if the Recreational Use Act was applicable." *Id.* at 1012. The judge in *Stephens,* however, felt constrained to so hold because of a prior Illinois decision in *Nelson v. Union Wire Rope Corp.,* 31 Ill.2d 69, 199 N.E.2d 769 (1964), which held an insurance carrier liable under Florida law for negligent safety inspections on a job site. Curiously, the *Stephens* judge did not attempt to differentiate between situations where liability had been limited by statute (such as under a RUS) and those where common-law third-party liability was involved, although the *Nelson* case did not preclude such an approach. Instead, the *Stephens* judge felt "bound by the general rule absent an indication that the State's highest court is prepared to abandon or modify it." *Stephens,* 472 F.Supp. at 1011.

Here, the district judge did not feel so constrained by any similar Kansas rulings. We conclude that he was correct not to apply common-law liability as set out in sections 323 and 324A of the Restatement, given the fact that the Kansas cases adopting that principle are not interpreting it in light of a statute limiting liability such as is the case here. *See Ingram,* 672 P.2d 1083; *Circle Land & Cattle Corp.,* 657 P.2d 532; *Schmeck,* 651 P.2d 585.

. . . .

In the present case, the district court noted that sound public policy would encourage safety inspections and warnings by owners of recreational areas and that liability under the RUS for negligent undertakings could well

- 20 -

have the effect of discouraging warnings and inspections altogether. Alternatively, property owners might pull their lands from public use rather than face the increased risk attaching to their precautionary conduct.

> We agree with the district court that there is no compulsion under Kansas law to extend sections 323 and 324A of the Restatement to the RUS context. The RUS itself is a statutory modification of the common law of torts and provides for no liability for simple negligence.

*Id.* at 1449–50 (internal footnote omitted). In holding that it would "decline to . . . undermine" the Kansas recreational use statute, the court also expressed specific concern that allowing liability for gratuitous conduct would eliminate the higher standard required under the Kansas statute, i.e., willful or malicious conduct. *Id.* at 1450. Notably, as it concerns this latter point, the State has expressed similar concerns in this case, cautioning against interpretations of our statute that would obviate the need for the "gross negligence exception" codified at Tennessee Code Annotated section 70-7-104(a)(1).

Both the *Stephens* and *Klepper* decisions were considered by the Ninth Circuit when it reviewed Hawaii's recreational use statute in the case of *Palmer v. United States*. *Palmer v. United States*, 945 F.2d 1134 (9th Cir. 1991). Similar to the plaintiffs in *Stephens* and *Klepper*, the plaintiff in *Palmer* attempted to escape the bar of his state's recreational use statute by pointing to voluntary conduct of the defendant, noting, among other things, that the defendant had specifically hired lifeguards and thereby allegedly undertaken a duty of care. *Id.* at 1137. The *Palmer* court ultimately rejected the plaintiff's efforts, including his reliance on the *Stephens* decision. In criticizing *Stephens*, the Ninth Circuit wrote that "*Stephens* is not persuasive . . . because the district court in *Stephens* erroneously believed itself bound by [the *Nelson* decision]. . . . *Nelson* had nothing to do with the applicability of a recreational use statute." *Id.* The court opined that it was not persuaded that the Hawaii legislature intended for an exception to exist in relation to the recreational use statute just because a landowner acted gratuitously to make land safer. *Id.* According to the court, *Klepper* was "instructive" in this regard. *Id.* The court further noted that if the plaintiff's voluntary conduct argument were to be embraced, "the result might be to discourage efforts to make recreational facilities safer." *Id.* at 1138.

In *Stann v. Waukesha County*, the Wisconsin Court of Appeals confronted the same type of argument considered in the decisions discussed above. *Stann* involved a tragic case concerning the death of a three-year-old child. *Stann v. Waukesha Cty.*, 468 N.W.2d 775, 777 (Wisc. Ct. App. 1991). Before her later death at a hospital, the child at issue in *Stann* had gone missing while at a county beach, only later to be found submerged in the children's area. *Id.* When the child's parents brought a wrongful death action against the county, they alleged negligence in several respects, including that the county's lifeguards had failed to take appropriate action upon hearing that the child was missing. *Id.* In an affidavit, the child's mother had estimated that twenty to twenty-five minutes had elapsed

from the time she first reported that her daughter was missing until the child was found. *Id.*

The child's parents contended that Wisconsin's recreational use immunity did not apply to their claim that the lifeguards had failed to take appropriate actions. *Id.* at 780. In part, they argued that the county had, "by training and placing lifeguards on duty, gratuitously assumed a responsibility not immunized under the statute." *Id.* The Wisconsin Court of Appeals rejected the parents' contention, noting the instruction and logic contained in a then-recent decision by its Supreme Court:

> In [*Ervin v. City of Kenosha,* 159 Wis.2d 464, 464 N.W.2d 654 (1991)], two boys drowned at a city park beach after they encountered an unmarked eight-foot drop-off. The boys' parents alleged, *inter alia,* that the city lifeguards were negligent in performing their duties and that the city was negligent in its hiring and training of the lifeguards. The parents further argued that the lifeguards' actions constituted the shouldering of an additional duty to which immunity did not attach. Relying on the recreational immunity statute, the trial court granted summary judgment to the city of Kenosha.

> On appeal, the parents in *Ervin* relied, as do the Stanns here, on *American Mutual Liability Ins. Co. v. St. Paul Fire & Marine Ins. Co.,* 48 Wis.2d 305, 313, 179 N.W.2d 864, 868 (1970), which provides that liability may attach to the "gratuitous" undertaking of duty. In *Ervin,* the supreme court held that *American Mutual* is inapplicable in cases where recreational use immunity is asserted as a defense. *See Ervin,* 159 Wis.2d at 476–77, 464 N.W.2d at 659.

> The supreme court's reasoning was twofold. First, the court noted that "[t]he legislature clearly expressed an intent to change conflicting common law when it enacted 1983 Wis.Act 418." *Id.* at 476, 464 N.W.2d at 659. Second, the *American Mutual* rule would have the effect of narrowing the scope of immunity for landowners, and thus run afoul of the legislature's express directive that sec. 895.52, Stats., be "liberally construed in favor of property owners to protect them from liability." *Id.* at 476–77, 464 N.W.2d at 659 (*quoting* sec. 1, 1983 Wis. Act 418). In so doing, the supreme court observed that "the legislature has not provided recourse for the victims' parents under the recreational use statute" because were liability to be "imposed on landowners for negligence in failing to provide *adequate* safety measures, it would encourage landowners to provide *no* safety measures...." *Id.* at 477, 464 N.W.2d at 659–60 (emphasis added). "Such a result would conflict with the intent of sec. 895.52." *Id.* at 477, 464 N.W.2d at 660.

*Id.* at 783.

Other courts have since adhered to this same course of action and denied plaintiffs' efforts to maintain assumed duty allegations outside the ambit of recreational use statute immunity. *See, e.g.*, *Johnson v. Lloyd's of London*, 653 So.2d 226, 231 (La. Ct. App. 1995) (citing favorably to *Klepper* and *Palmer*, holding that "passive or active" negligence falls within the scope of Louisiana's recreational use provisions, and expressing concern that a holding alternative to the rule from *Klepper* and *Palmer* would "encourage owners to take no steps whatsoever to make recreational facilities safer, and might encourage some landowners to withdraw their land from recreational use altogether, thereby undermining the very purpose of the legislation"); *Mena v. Lack's Beach Serv., Inc.*, Civil Action No. 4:06-cv-2536-TLW, 2008 WL 8850813, at *6 (D.S.C. Apr. 16, 2008) (favorably referencing *Palmer*, *Klepper*, and *Stann*); *see also Reed v. City of Portsmouth*, Civil No. 12-cv-164-JD, 2013 WL 1386613, at *3 (D.N.H. Apr. 3, 2013) (granting summary judgment in favor of a city owner of park despite plaintiffs' argument that, even if the recreational use statute otherwise applied, the city could be liable because it assumed a duty to maintain park through maintenance, regulation, and patrolling).

Of course, the critical question here is whether the same analysis should obtain under Tennessee's recreational use statute. Again, we are of the opinion that it should. To recap, the Pierces appear to rely upon the language in Tennessee Code Annotated section 70-7-104(a)(2) to support their argument that a defendant's voluntary undertaking could effectively result in a waiver of recreational use statute immunity. Although there are, as previously noted, certainly some interesting questions as to the specific scope of this provision, we note again that there is nothing in it or elsewhere in the recreational use statute indicating that exceptions exist for gratuitous undertakings by landowners. Moreover, insofar as section 70-7-104(a)(2) contains the language "owed a duty," which the Pierces appear to seize upon, we emphasize once more that we construe this to refer to legal duties otherwise owed as a general proposition. In other words, we do not interpret the provision as somehow contemplating liability for the alleged assumption of the very duties Tennessee Code Annotated section 70-7-102 says are *not* owed. The absence of any such textual signal notwithstanding, allowing liability to potentially attach in this context could, as a practical consequence, discourage landowners from taking *any* precautionary measures, a point about which several of the above-discussed cases have expressed concern.

Of note, we observe that one court has already broached the topic of whether Tennessee's recreational use statute contains any exceptions for alleged assumed duties. In the previously-cited *Cagle* decision, the plaintiff argued that the statute's immunity provisions should not apply due to certain voluntary undertakings by the defendant. *Cagle*, 937 F.2d at 1076. The Sixth Circuit did not find favor in this contention, including the plaintiff's reliance on the *Stephens* decision, stating that the Tennessee recreational use statute "seems to anticipate, and reject, the argument that plaintiff makes." *Id.* In making

its point, the court took stock of, among other things, the explicitness of Tennessee Code Annotated section 70-7-102 as to the duties that are not required of a landowner. *Id.*

What we have here is a case where the Pierces seek to hold the State liable for alleged breaches of alleged assumed duties, and the very nature of those duties corresponds to behavior which Tennessee Code Annotated section 70-7-102 immunizes. Consistent with the foregoing discussion, we therefore conclude that the Pierces' argument is without merit. Tennessee Code Annotated section 70-7-104(a)(2) is unavailable to the Pierces as an exception, even under their advocated-for reading of the text.

## CONCLUSION

For the specific reasons stated herein, the Claims Commission's dismissal of the complaint is affirmed.

s/ Arnold B. Goldin
ARNOLD B. GOLDIN, JUDGE
